## NO POWER LINE, INC., AND OTHERS v. THE MINNESOTA ENVIRONMENTAL QUALITY COUNCIL AND OTHERS.

250 N. W. 2d 158.

December 23, 1976—No. 46788.

*Kief, Duranske & Fuller* and *George L. Duranske III,* for appellants.

*Warren Spannaus,* Attorney General, *Richard B. Allyn,* Solicitor General, and *Kent Harbison* and *Donald A. Kannas,* Special Assistant Attorneys General, for respondent council.

*LeFevere, Lefler, Pearson, O'Brien & Drawz, John E. Drawz, LeVander, Gillen, Miller & Magnuson,* and *Roger C. Miller,* for respondents Cooperative Power Assn. and United Power Assn.

Considered and decided by the court en banc.

KELLY, JUSTICE.

Appellants appeal from an order of the Grant County District Court dismissing their appeal of the issuance of a certificate of corridor compatibility by respondent. The district court found that the award of the certificate was nonreviewable and that appellants lacked standing to prosecute their appeal. We reverse.

On April 8, 1975, Cooperative Power Association and United Power Association filed a joint application with respondent, Minnesota Environmental Quality Council (MEQC), for designation of a corridor and issuance of a certificate of corridor compatibility for a high-voltage transmission line. The proposed line consisted of two segments: a 400-kilovolt, direct-current line

from a proposed thermal electric generating plant at Coal Creek, North Dakota, to a proposed conversion facility at Dickinson, Minnesota; and a 345-kilovolt, alternating-current, double-circuit line from the Dickinson conversion facility to a Northern States Power substation at Coon Rapids, Minnesota. The application identified a preferred and alternative corridor in which the transmission line might finally be located. The MEQC suggested two additional corridors and appointed a hearing officer and a corridor evaluation committee to evaluate the application. The hearing officer conducted 11 public hearings, and submitted his findings and recommendations to the MEQC. The corridor he suggested was an amalgamation of the applicants' preferred corridor and one suggested by the MEQC. The corridor evaluation committee recommended a different corridor in its report to the MEQC. On October 3, 1975, the MEQC conducted a hearing and adopted the hearing officer's report. On that date it also issued a certificate of corridor compatibility to the power associations.

The legislature, by enacting the Minnesota Power Plant Siting Act, Minn. St. 116C.51 to 116C.69, has provided that the location of a high-voltage transmission line in the state shall be determined by the MEQC and occur in two stages. The first stage involves designation of a corridor, a path up to 30 kilometers in width denoting the general location of the transmission line. Minn. St. 116C.57, subd. 1; Minn. Reg. MEQC 71(d)(3). The eventual location of the line, as determined in the second stage after further study, evaluation, and hearings, must lie within the designated corridor. Minn. St. 116C.57, subd. 2. The second stage begins upon the utility's application for a construction permit and must be initiated within two years of the designation of the corridor. If the MEQC issues a construction permit, the second stage is complete and the utility can then begin construction of the transmission line. Minn. St. 116C.62.[1]

---

[1] Even at this point the route of the proposed high-voltage transmission line might have a width of up to 1 kilometer. Minn. Reg. MEQC 71(d)(17). Construction cannot begin unless the Minnesota Energy

In the instant case, appellants sought judicial review of the MEQC's issuance of the certificate of corridor compatibility on December 3, 1975, before the utilities initiated the second stage of the process with their application for a construction permit on December 9, 1975. Appellants are two nonprofit corporations (No Power Line, Inc., and Save Our Countryside, Inc.) and an association (Preserve Grant County). The joint membership of these groups approximates 200 and allegedly is composed predominately of owners of land lying within the designated corridor. The appeal was brought under Minn. St. 116C.65.[2] Respondent moved for judgment on the pleadings, and the district court dismissed the appeal, holding that the issuance of the certificate of corridor compatibility was not reviewable and that appellants lacked standing to appeal. Appellants challenge these determinations on their appeal to this court.

The MEQC concedes that approval of a transmission line location is subject to judicial review at some point. It argues that review is available only after a construction permit for the line has been issued. On June 3, 1976, the MEQC designated a specific route within the corridor for the transmission line and issued a construction permit. A petition for review of the MEQC action was filed in district court by an individual and another organiza-

---

Agency has issued a certificate of need. Minn. St. 116H.13. The utilities must also secure the other state permits required to construct and operate electric generating and transmission facilities. Minn. St. 116C.61, subd. 2.

[2] Minn. St. 116C.65 provides in part: "Any utility, party or person aggrieved by the issuance of a certificate or emergency certificate of site compatibility or transmission line construction permit from the council or a certification of continuing suitability filed by a utility with the council or by a final order in accordance with any rules and regulations promulgated by the council, may appeal therefrom to any district court where such large electric power generating plant or high voltage transmission line is to be located. Such appeal shall be made and perfected within 60 days after the issuance of the certificate or permit by the council or certification filed with the council or the filing of any final order by the council."

tion on behalf of all interested parties. In these circumstances, we do not decide whether the issuance of a certificate of corridor compatibility is itself subject to judicial review.[3] Instead, under our inherent powers, we order that the appeal from the granting of the construction permit and this appeal be consolidated for trial in the court below. We further hold that appellants have alleged sufficient interest in the controversy to be aggrieved parties within the terms of Minn. St. 116C.65. Appellants are organizations whose members allegedly own land within the designated corridor. They have cited health, safety, and environmental dangers that may arise from proximity of a high-voltage transmission line. As organizations appellants have no standing here, but each can derive standing from its members. See, Sierra Club v. Morton, 405 U. S. 727, 739, 92 S. Ct. 1361, 1368, 31 L. ed. 2d 636, 645 (1972). We find that a party is aggrieved under Minn. St. 116C.65 in this context if the individual owns land within the corridor designated by the MEQC. Therefore, if appellants' allegations of property ownership are borne out, each organization would have standing in the consolidated trial before the district court. At that trial the propriety of issuing a certificate of corridor compatibility as well as the construction permit may be explored and determined.

Reversed and remanded for trial.

Mr. Justice Peterson took no part in the consideration or decision of this case.

---

[3] The MEQC regulations, Minn. Reg. MEQC 71 to 75, do not provide for judicial review of the issuance of a certificate of corridor compatibility. In this respect the regulations are arguably inconsistent with the Minnesota Power Plant Siting Act. See, Minn. St. 116C.57, subd. 1, which provides: "* * * Upon designation of the site or corridor, the council shall issue to the utility a certificate of site compatibility."; and Minn. St. 116C.65, quoted in footnote 2, *supra.*