UNITED POWER ASSOCIATION and Co-operative Power Association, Plaintiffs, Appellants and Cross-Appellees,

v.

Edward MOXNESS, Inez Moxness, Willard J. Schroeder, Alva N. Schroeder, Clemens C. Buck, Amanda B. Buck, Marian L. Clarey, Charles E. Prochnow, Helen E. Prochnow and Peggy Prochnow, Lester H. Wetherbee, Myrtle Wetherbee, John A. Sauter, Lois V. Sauter, Helen A. Healy, and Howard Healy, Defendants and Appellees,

Adolph Jelinek and Germaine Jelinek, Defendants, Appellees and Cross-Appellants.

Civ. No. 9449.

Supreme Court of North Dakota.

July 6, 1978.

As Amended July 12, 1978.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for plaintiffs, appellants and cross-appellees; argued by John D. Kelly, Fargo.

Joseph A. Vogel, Jr., Mandan, Baer, Asbridge & Robb, and Christensen & Thompson, Bismarck, for defendants, appellees and cross-appellants; argued by Joseph A. Vogel, Jr., Mandan.

PEDERSON, Justice.

The appeal and cross-appeal from part of an order in an eminent domain proceeding (a consolidation of separate suits from Sargent and Richland Counties) involve awards of costs, fees (including attorney fees), and expenses to landowners (§§ 32–15–32 and 32–15–35, NDCC). Sums awarded as appraisal fees are not challenged. We reverse and remand for further proceedings.

The events which bear upon the principal dispute here are as follows:

(1) *Before January 1975*

United Power Association and Cooperative Power Association (hereinafter UPA–CPA), Minnesota cooperative corporations engaged in generating and transmitting electrical power for distribution in Minnesota and Wisconsin through distributing cooperatives, made plans to construct a major electric generating plant at Coal Creek in McLean County, North Dakota. Also planned was a high voltage, direct current transmission line to deliver the electric power generated at Coal Creek to a distribution terminal at Dickinson Substation in Wright County, Minnesota. A major part of the generating plant was constructed before January 1975, but right-of-way for the transmission line across Sargent and Richland Counties had not been acquired.

(2) *April 1975*

The North Dakota Legislature enacted as an emergency measure (effective April 9, 1975) the North Dakota Energy Conversion and Transmission Facility Siting Act (Chapter 436, S.L.1975—now Chapter 49–22, NDCC), which provides in part that:

"No utility shall begin construction of an energy conversion facility or transmission facility in the state, or exercise the right of eminent domain in connection with such construction, without first having obtained a certificate of site compatibility issued with respect to such facility by the [Public Service] commission . . . ." Section 49–22–07, NDCC.

Some provisions of the Act did not become effective until implementing rules and regulations were adopted.

(3) *November 1975*

UPA–CPA instituted eminent domain proceedings (without first having obtained a certificate of site compatibility) to acquire right-of-way from the landowners involved in this appeal.

(4) *March 1976*

The Public Service Commission (hereinafter PSC) determined, after holding extensive hearings (in which the landowners involved in this appeal participated), that it had jurisdiction over the UPA–CPA transmission line pursuant to Chapter 49–22, NDCC. The PSC ordered that UPA–CPA not commence construction of the transmission line without first obtaining PSC authority. That order was not appealed.

(5) *December 1976*

UPA–CPA applied for a route permit and construction authorization from the PSC and, after extensive hearings (in which the landowners involved in this appeal again participated), the authority was granted. The route finally authorized by the PSC

contained numerous variations from that initially proposed by UPA–CPA. Authority was granted to construct the line on lands owned by persons who we will call the "Wetherbee group." Authority was not granted to construct the line on lands owned by persons who we will call the "Moxness group."

(6) *July 1977*

UPA–CPA applied to the district court for a dismissal of the eminent domain proceedings against the Moxness group of landowners, acknowledging in its application ". . . that the dismissal . . . shall be subject to a determination by this court as to court costs, expenses and fees, including reasonable attorney's fees to said defendants by reason of the dismissal of this action against them." The Moxness group of landowners moved that the court award them costs, fees and expenses pursuant to the provisions of § 32–15–35, NDCC.

(7) *August 1977*

UPA–CPA and the Wetherbee group of landowners reached agreement concerning the amount of compensation to be awarded for the right-of-way taken, but left unresolved the amount of costs to be recovered by the landowners under § 32–15–32, NDCC.

(8) *September 1977*

The trial court ordered UPA–CPA to pay to both groups of landowners, costs, fees and expenses based in part upon their participation in the jurisdictional hearings (referred to in item (4) above), and in the site location hearings (referred to in item (5) above). Attorney fees awarded to the Wetherbee group of landowners were based upon contingent fee contracts. Attorney fees awarded to the Moxness group of landowners were not based upon an hourly rate.

UPA–CPA, in this appeal, contend that:

(1) Section 32–15–35, NDCC, does not permit landowners to recover attorney fees incurred by them in connection with PSC proceedings under Chapter 49–22, NDCC.

(2) Section 32–15–35, NDCC, does not permit landowners to recover personal expenses and loss of time incurred by them in connection with PSC proceedings under Chapter 49–22, NDCC.

(3) Section 32–15–35, NDCC, does not permit landowners to recover attorney fees based upon other than an hourly rate.

(4) Section 32–15–32, NDCC, does not permit landowners to recover attorney fees based upon contingent fee contracts.

Jelinek, in cross-appealing, argues that the trial court arbitrarily reduced the costs awarded without a basis therefor in the record.

Reasonableness of the amounts awarded for costs and attorney fees is an issue of fact and we do need to know the basis of the trial court's determinations, whether we apply the standard of "clearly erroneous" from Rule 52(a), NDRCivP, or the standard of "abuse of discretion." See the discussion on this subject in *City of Bismarck v. Thom*, 261 N.W.2d 640, 647 (N.D.1977). From the trial court's memorandum opinion and the affidavits on file, we are made aware of the basis for the awards made in this case. It is obvious that attorney fees and other costs and expenses were, in part, based upon participation in jurisdictional and site location hearings conducted by the PSC. In addition, we learn that the basis of some of the costs and expenses was "loss of time" rather than actual "out-of-pocket payments."

I.

The Moxness group of landowners, as well as the Wetherbee group, and Jelinek (on his cross-appeal), all argue that they were compelled to participate in PSC proceedings under Chapter 49–22, NDCC, in order to protect their interests. Their contention appears to be that PSC hearings on jurisdiction and site compatibility have really become a part of, or have replaced, judicial determination of use and necessity under Chapter 32–15, NDCC.

Section 49–22–16(1), NDCC, provides, in part:

"The issuance of . . . a transmission facility permit and subsequent . . . use of such . . . route locations for . . . transmission facilities shall, subject to subsections 2 and 3, *be the sole site approval required to be obtained by the utility*." [Emphasis supplied.]

If PSC hearings to determine "sole site approval" are a part of, or substitution for, the judicial determinations of use and necessity under § 32–15–05, NDCC, it would logically follow that those costs recoverable under either § 32–15–32 or § 32–15–35, NDCC, should include the costs incurred by landowners who participate in those PSC hearings.

Section 32–15–32, NDCC, provides in part:

"The court may in its discretion award . . . reasonable actual or statutory costs or both . . . and reasonable attorney's fees *for all judicial proceedings*." [Emphasis supplied.]

Section 32–15–35, NDCC, provides, in part:

"Whenever [any condemnor] . . . shall commence eminent domain proceedings . . . and thereafter withdraws or has such proceedings dismissed without agreement of the . . . [condemnee] . . . [the condemnor] shall be liable for and pay . . . all court costs, expenses, and fees including reasonable attorney fees . . . ."

■ The judicial determination of use and necessity pursuant to § 14 of the North Dakota Constitution, or § 32–15–05, NDCC, has not been supplanted, revised or supplemented by the administrative determination of site compatibility. Although, in cases of energy transmission lines, § 49–22–07, NDCC, makes it a condition precedent to the exercise of the right of eminent domain, there is nothing in Chapter 49–22 which directly affects the judicial functions in eminent domain proceedings.

A PSC determination to issue a certificate of site compatibility or transmission facility construction permit may be appealed by any party aggrieved thereby under § 49–22–19, NDCC, and to the extent allowed in any appeal under the Administrative Agencies Practice Act (Chapter 28–32, NDCC), certain costs may be recoverable. In addition, when a judicial determination that unfair tactics have been committed, pursuant to § 49–22–16.1(3), NDCC, the court shall award costs and reasonable attorney fees. Neither of these provisions relate in any way to eminent domain. We conclude that the North Dakota Energy Conversion and Transmission Facility Siting Act (Chapter 49–22, NDCC), and the statute governing proceedings in eminent domain (Chapter 32–15, NDCC), serve entirely different and unrelated functions.

■ No language in §§ 32–15–32 or 32–15–35, NDCC, in any way indicates any intent on the part of the Legislature to extend the application of those provisions to proceedings provided for outside of Chapter 32–15. The Legislature, not this court, should make the decision of whether costs and attorney fees should be allowed to landowners who participate in PSC jurisdictional or siting hearings.

II.

■ The attorney fees awarded to all of the landowners in this case clearly were not based upon the guidelines articulated by this court in *City of Bismarck v. Thom*, 261 N.W.2d 640 (N.D.1977).[1] The record indicates that attorney fees in some cases were based upon contingent fee arrangements between the landowners and their lawyers. In no case does it appear that time expended and an hourly rate formed the starting point.

Counsel acknowledges that in *Thom* we said that "contingent fee arrangements in their usual sense have no application" and

---

1. The *Thom* opinion was issued on December 19, 1977, several months after the trial court decided the instant case.

that time expended and an hourly rate is "the only legitimate starting point," however it is argued that it would be unjust to apply it in this case. This assumes that the trial court will fail to recognize counsel's expertise and that the trial court will arbitrarily assume that because few hours are required for preparation, a small fee is warranted. That argument overlooks a significant part of what we said in *Thom* :

> ". . . the trial judge must first determine the number of hours expended . . . then assign specific hourly rates based upon the attorney's experience and reputation . . . The hourly rate can be adjusted upwards or downwards on the basis of objective evaluation of the complexity and novelty of the litigation and the corresponding degree of skills displayed by the attorney." *City of Bismarck v. Thom, supra,* 261 N.W.2d at 646.

The hourly rate which was indicated in at least some of the contingent fee arrangements in this case should not form a minimum or maximum limitation upon the trial court in its effort to determine a reasonable fee. All applicable factors should be considered. Ultimately, the award of attorney fees is a matter addressed to the sound discretion of the trial court.

> ". . . a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476, 488 (1974).

See, also, *Leonard v. Medlang,* 264 N.W.2d 481, 484 (N.D.1978). There has been shown no manifest injustice in this case. As we did in *Thom,* we urge trial courts to prepare findings of fact or detailed memorandum opinions to disclose the basis of their determinations. The extensive opinion of Judge Finesilver in *Keyes v. School District No. 1, Denver, Colo.,* 439 F.Supp. 393 (D.Colo. 1977), is commended for trial courts to consider.

Although *Thom* involved the determination of costs under § 32–15–32, NDCC, no reason has been shown why the same rules should not apply for a determination of costs under § 32–15–35, NDCC. We hold that the same standards apply.

## III.

Particularly in the cross-appeal of Jelinek we are urged to approve claims for expenses other than actual cash outlays. Counsel relies principally upon *Atherton v. State Conservation Commission,* 203 N.W.2d 620 (Iowa 1973). Section 472.34, I.C.A., provides, in part, that the condemnor "shall pay, in addition to the costs . . . *damages* actually suffered." [Emphasis supplied.] This distinguishes Iowa's statute from North Dakota's and Minnesota's, which use the term "expenses." The Minnesota Supreme Court, in *State, By Head v. Savage,* 255 N.W.2d 32, 38 (Minn.1977), said:

> "The phrase 'reasonable costs and expenses including fees of counsel,' . . . means charges which the landowner incurs and which he is obligated to pay out of pocket by reason of the condemnation proceeding . . . ."

We think that it is proper to apply the Minnesota explanation rather than the one from Iowa. While the term "damages" may easily refer to all the loss suffered as a consequence of the condemnor's action, the term "expenses" is more limited. Black's Law Dictionary (Rev. 4th Ed.) defines expense as "that which is expended, laid out or consumed; an outlay; charge; cost; price." The numerous cases cited by *Black's* almost universally state the requirement of an actual outlay.

The order (except for appraisal fees) is reversed. The case is remanded for further proceedings consistent with what we have said in this opinion. No costs will be allowed on this appeal.

ERICKSTAD, C. J., and PAULSON and SAND, JJ., concur.

VOGEL, Justice, dissenting in part and concurring in part.

I dissent from Part II of the majority opinion, for reasons stated in my dissent in *City of Bismarck v. Thom*, 261 N.W.2d 640, 647 (N.D.1977).

In all other respects I concur in the majority opinion.