COOPERATIVE POWER ASSOCIATION,
etc., Respondent, United Power
Association, etc., Respondent,

v.

James F. EATON, et al., Appellants.

No. 50345.

Supreme Court of Minnesota.

Sept. 28, 1979.

Kenneth E. Tilsen, St. Paul, for appellants.

LeFevere, Lefler, Pearson, O'Brien & Drawz, Minneapolis, for respondent Co-op. Power.

LeVander, Gillen, Miller & Magnuson, So. St. Paul, for respondent United Power Assn.

SCOTT, Justice.

This matter involves an eminent domain proceeding brought by respondents Cooperative Power Association (CPA) and United Power Association (UPA) in Blue Earth County District Court, Fifth Judicial District, to acquire easements on certain property located within Blue Earth County for the purpose of constructing and maintaining a high voltage transmission line (HVTL). By orders dated June 13, 1979, the district court granted respondents' petition, thereby awarding respondents title to and possession of the easements requested and appointing three commissioners to appraise the value of the amount of damages sustained by the owners of the subject land. We remand for further proceedings.

Respondents are cooperative corporations engaged in the wholesale distribution of electric power and energy. They supply a total of 34 rural cooperatives which, in turn, service approximately 275,000 accounts in Minnesota and a portion of Wisconsin. CPA and UPA have undertaken a project for the construction of certain electrical facilities, commonly referred to as the "CU Project." The project consists of a 1,000 megawatt generating station (Coal Creek Station) located near Underwood, North Dakota; a ±400 kilovolt dc HVTL from the Coal Creek Station to a converter station (Dickinson Substation) located near Delano in Wright County, Minnesota; a 345 kilovolt ac HVTL from the Dickinson substation to a CPA/UPA facility (Coon Creek Substation) located in Coon Rapids, Anoka County, Minnesota; a 345 kilovolt ac HVTL from the Dickinson substation to a CPA/UPA facility (Wilmarth Substation) located in Mankato, Blue Earth County, Minnesota; and associated facilities.

The instant action involves the portion of the HVTL running from the Dickinson substation to the Wilmarth substation (commonly referred to as the "Wilmarth line") that is located in Blue Earth County.[1] By petition dated May 2, 1979, respondents commenced this eminent domain proceeding in accordance with Minn.Stat. ch. 117 (1978) to acquire easements on six parcels of property situated in Blue Earth County to facilitate the construction and maintenance of the HVTL in that area. Accompanying the petition was a motion by respondents requesting an order of the district court transferring title to and possession of the easements pursuant to Minn.Stat. § 117.042 (1978).[2]

Appellants, owners of two of the six parcels of land involved in the eminent domain action, responded with a multitude of claims and defenses, including that the proposed acquisitions are not for public uses and purposes; that the acquisition is not authorized by law; and that the Certificate of Need for the CU Project was not duly and regularly issued because the Minnesota Energy Agency (MEA) failed to publish notice in Blue Earth County of a hearing on the need question. Alternatively, appellants requested that if the power companies were entitled to an interest in appellants' properties the court "limit the title or easement * * * by defining the rights and privileges which the owner of the lands may exercise * * *" and that the landowners be granted the right to reserve the option set forth in Minn.Stat. § 116C.63, subd. 4 (1978).[3]

---

1. The Wilmarth line, which is approximately 76 miles in total length, runs for about three miles within Blue Earth County.

2. This statute allows a district court, in an eminent domain proceeding, to transfer title to and possession of the requested property interest before the filing of a damage award by court-appointed commissioners where the petitioner "requires" title and possession prior to that time.

3. Section 116C.63, subd. 4 (1978), states, in pertinent part, that when certain property "is proposed to be acquired for the construction of a site or route by eminent domain proceedings, the property owner shall have the option to require the utility to condemn a fee interest in any amount of contiguous land which he owns and elects in writing to transfer to the utility within 60 days after his receipt of the petition * * *."

At the hearing respondents introduced as exhibits the certificate of need for the CU Project issued by the Minnesota Energy Agency on April 2, 1976, pursuant to Minn. Stat. § 116H.13 (1978); a resolution of the Minnesota Environmental Quality Council[4] (MEQC) dated April 11, 1977, which approves the final Environmental Impact Statement for the Wilmarth line, in accordance with its authority under Minn.Stat. ch. 116D (1978); and various decisions of MEQC made pursuant to Minn.Stat. ch. 116C (1978), which designated a corridor, a route within the corridor, and issued a construction permit for the Wilmarth line. In addition, respondents called two witnesses who testified regarding the need for acquiring the property interests in question. Appellants offered no evidence of their own nor did they cross-examine respondents' witnesses, because they considered the proceeding preliminary in nature and thought a trial on these issues would be held at a later date.

On June 13, 1979, the district court rendered its decision granting respondents' petition. In a memorandum attached to its orders, the trial court reasoned, in part, that the necessity for the requested easements had been conclusively determined by the Minnesota Energy Agency's issuance of a certificate of need and various decisions of MEQC, and that arguments made by respondents were "for the most part" raised in the case of *No Power Line v. Minn.*

*Environmental Quality Council,* 262 N.W.2d 312 (Minn.1977), and rejected.

On appeal, appellants essentially contend that (1) they were denied their right to a hearing on the condemnation petition because they were not given the opportunity to present evidence, and (2) the certificate of need for the CU Project is invalid insofar as the Wilmarth line is concerned because the agency failed to publish notice along the Wilmarth line of the certificate of need hearing.

We believe that appellants' first claim has merit. The trial judge evidently felt that as a matter of law there were no factual issues in dispute which would require a trial. He reasoned that the decisions of MEA and MEQC had, in effect, conclusively decided the threshold question of whether condemnation was "necessary."[5] We agree with the trial court's analysis insofar as regularly issued decisions of MEA and MEQC are conclusive as to the public necessity for the project in general.[6] However, as respondents admit, the landowners should be able to litigate the limited issue of whether the specific interest in a particular piece of property is necessary to accomplish the general project. This conclusion would allow the landowners to address the factual issue of whether the requested easement is too broad to effectuate the purpose in question. In this case, appellants claimed before the trial court and contend in their brief on appeal that the easements sought by the power companies

4. It should be noted that the official name of the Minnesota Environmental Quality Council was changed to the Minnesota Environmental Quality Board by 1975 Minn.Laws, ch. 271, § 3(7).

5. Minn.Stat. 117.075 (1978) requires, in pertinent part, that the proposed taking "appear to be necessary" for a condemnation petition to be granted. In *County of Blue Earth v. Stauffenberg,* 264 N.W.2d 647, 650 (Minn.1978), this court acknowledged that a proposed taking is necessary within the meaning of § 117.075 if it is "reasonably necessary or convenient" to attain the desired goal.

6. Although Minn.Stat. ch. 117 (1978) has not been amended to reflect the relationship between a condemnation proceeding and deci-

sions of MEA and MEQC, it would be unreasonable to conclude that the determinations of these agencies, made pursuant to extensive legislation, *see, e. g.,* Minn.Stat. ch. 116C, 116D, and 116H (1978), were a mere guide to a district court's ruling on necessity under § 117.-075. A contrary conclusion would allow a single condemnation court in a county along the transmission line to effectively overrule the comprehensive findings of MEA and MEQC, who presumably have specialized expertise in the area. Such an absurd result is presumed to be unintended by the legislature, and thus should be avoided in construing the pertinent statutory provisions. Minn.Stat. § 645.17(1) (1978).

are broader than necessary. This issue is properly litigated at a trial, wherein the parties may submit evidence, etc., relative to the breadth of the property interest necessary for the purpose of constructing and maintaining the general project.

Another contested factual question which should be submitted at trial relates to respondents' assertion that a "quick-take" is "required" under Minn.Stat. § 117.042. That statute provides, in relevant part:

> Whenever the petitioner shall *require* title and possession of all or part of the owner's property prior to the filing of an award by the court appointed commissioners, the petitioner shall, at least 90 days prior to the date on which possession is to be taken, notify the owner of the intent to possess by notice served by certified mail and before taking title and possession shall pay to the owner or deposit with the court an amount equal to petitioner's approved appraisal of value. If it is deemed necessary to deposit the above amount with the court the petitioner may apply to the court for an order transferring title and possession of the property or properties involved from the owner to the petitioner. [Emphasis added.]

The power companies gave the required notice and deposited in court the monies provided for by § 117.042. However, appellants claim that respondents do not "require" the requested easements prior to the time a damage award could be filed by court-appointed commissioners. Since this issue is disputed, the parties may present evidence at the hearing in support of their respective positions.[7] Also, at trial, the landowners should be given the opportunity to address their request that they be given

the right to reserve the option provided for in Minn.Stat. § 116C.63, subd. 4 (1978).

The second issue raised by appellants, which relates to the lack of notice along the Wilmarth line of the certificate of need hearing, concerns us greatly. The trial court did not specifically respond to this contention in his memorandum, but indicated that this issue, like the other claims made by appellants, had been resolved in *No Power Line v. MEQC, supra.* However, a review of the *No Power Line* case discloses that this issue was not raised and therefore was not resolved in that decision.

■ Nor can the merits of the issue be reached on this appeal because the record is insufficient for us to make an informed decision. Appellants contend that the lack of notice violates due process, equal protection, the Minnesota Administrative Procedures Act (Minn.Stat. ch. 15 (1978)), and Minn.Rule, Energy 504(b). Respondents argue that the doctrine of laches bars consideration of these claims and also indicate that, although no formal notice was published along the Wilmarth line, appellants were aware of the MEA hearing on the certificate of need for the CU Project. The record, however, contains no evidence relating to what notice was given along the Wilmarth line, actual or constructive; the reasonableness of appellants' delay in asserting their lack of notice claim; or the prejudice sustained by respondents as a result of any delay on appellants' part. Since we are unable to decide the merits of appellants' claim in a factual vacuum, we remand for consideration of the arguments, both factual and legal, raised by the parties with respect to the validity of the certificate of need as it relates to the Wilmarth line. In addition, if appellants' contention is determined to be meritorious, before the certifi-

---

7. Respondents assert that, even if factual issues existed which are properly litigated at a trial, appellants were allowed opportunity at the hearing to present evidence, cross-examine witnesses, etc., and thus were given a fair hearing. After a review of the record, we cannot agree. A great deal of confusion was generated in the proceeding below, by both court and counsel, as to whether the hearing was prelimi-

nary in nature or the final trial on respondents' petition. Since the scope of the proceeding was not adequately clarified, appellants were not given a meaningful opportunity to support their factual claims. Accordingly, in all fairness, upon remand appellants must be allowed the opportunity to present their evidence as to these contentions.

cate of need decision relative to the Wilmarth line should be disturbed we believe it is appropriate to require appellants to make a prima facie showing that they have material evidence, not yet considered by the MEA, which could reasonably result in a modification of the agency's prior decision.[8] Thus, on remand the court shall also examine evidence submitted by the parties on this question.

In summary, we remand for reconsideration of whether respondents' condemnation petition should be granted, which will necessitate hearing on and decision of the following issues:

(1) Applicability of the doctrine of laches to the appellants' assertion that the certificate of need is invalid as to the Wilmarth line for lack of notice of the need hearing;

(2) Whether the notice (actual or constructive) given to appellants, if any, of the certificate of need hearing—

   (a) was insufficient to satisfy due process principles;

   (b) constituted a denial of equal protection;

   (c) violated the Administrative Procedures Act; and/or

   (d) failed to comply or substantially comply with Minn.Rule, Energy 504(b).

(3) Upon offer of proof, whether appellants have sufficient evidence, not yet considered by the MEA, which to a reasonable mind could materially change the MEA's decision with respect to the Wilmarth line;

(4) Whether the scope of the easements requested by respondents is broader than necessary to accomplish the construction and maintenance of the HVTL in question;

(5) Whether a "quick-take" is "required" under Minn.Stat. § 117.042;

(6) Whether appellants should be granted the right to reserve the option set forth in Minn.Stat. § 116C.63, subd. 4; and

(7) Any other issue the district court determines is pertinent to the contentions made by the parties.

Finally, the instant case is one of many similar eminent domain actions which have been commenced or are expected to be instituted shortly along the Wilmarth line by respondents. To promote uniformity of decision and judicial efficiency, pursuant to our inherent authority we order that these eminent domain proceedings pending in other counties along the Wilmarth line be consolidated with the instant case for hearing in Blue Earth County, Fifth Judicial District, before a three-judge panel to be specially appointed by this court.[9] Any similar eminent domain actions in counties along the Wilmarth line which have not yet been commenced may be initiated by respondents and transferred to Blue Earth County District Court, to be heard as part of the consolidated hearing. Additionally, any interested party, including the MEA, who was affected by the alleged lack of notice along the Wilmarth line may intervene upon motion being made to and granted by the three-judge panel.

Remanded for further proceedings consistent with the decision reached herein. This court's stay of the judgment entered in district court remains in effect, without the posting of a supersedeas bond, until further order of this court.

SHERAN, C. J., and PETERSON, J., took no part in the consideration or decision of this case.

---

**8.** In light of the ramifications of voiding the MEA's need determination relative to the Wilmarth line, we believe public policy mandates a showing that a new hearing before the MEA would serve a useful purpose. Otherwise, appellants' lack of notice claim, even if meritorious, would constitute nothing more than a tactic to delay the inevitable, resulting in great prejudice ultimately to the public.

**9.** A formal order, consolidating these actions and appointing the three-judge panel, will be issued shortly, after the parties have provided this court with certain requested information.

## ORDER

TO: Kenneth E. Tilsen, Attorney for Appellants, 400 Minnesota Building, St. Paul, MN 55101

John E. Drawz, Attorney for Respondent Cooperative Power Ass'n
LeFevere, Lefler, Pearson, O'Brien & Drawz
1100 First National Bank Building
120 South Sixth Street
Minneapolis, MN 55402

Roger C. Miller, Attorney for Respondent United Power Ass'n
LeVander, Gillen, Miller & Magnuson
402 Drovers Bank Building
633 South Concord Street
South St. Paul, MN 55075

WHEREAS, an appeal was filed in the above-entitled matter; and

WHEREAS, this Court has been informed that the above-entitled matter is but one of a series of similar actions commenced or soon to be commenced in other district courts in this state for the purpose of condemning certain properties along the "Wilmarth line" of the CU Project to facilitate construction and maintenance of a high voltage transmission line; and

WHEREAS, this Court has determined that all such actions should be consolidated for hearing in district court;

IT IS HEREBY ORDERED that the above-named parties inform this Court in writing returnable on or before October 8, 1979, of the following:

The case title; the district court number; the precise nature of all relief sought; and the procedural background of all pending or completed litigation in connection therewith, so that this court may issue a formal order of consolidation.

Dated: September 26, 1979

BY THE COURT
George M. Scott
Associate Justice