**In re CONDEMNATION PROCEEDING FOR the WILMARTH LINE OF the CU PROJECT.**

**No. CO–85–874.**

Court of Appeals of Minnesota.

Jan. 14, 1986.

John E. Drawz, Minneapolis, for appellant Coop. Power Ass'n.

Roger C. Miller, South St. Paul, for appellant United Power Ass'n.

Kenneth E. Tilsen, St. Paul, for respondents.

Heard, considered and decided by HUSPENI, P.J., FOLEY and FORSBERG, JJ.

## OPINION

FOLEY, Judge.

Appellants, Cooperative Power Association and United Power Association, appeal from that part of a judgment granting respondents attorney's fees and costs of $340,450.84, following appellants' dismissal of condemnation proceedings. Appellants argue that the trial court misconstrued Minn.Stat. § 117.195, subd. 2 (1982) by awarding fees to counsel who represented a nonprofit corporation, Southern Landowners' Alliance of Minnesota, Inc. (SLAM), rather than individual landowners, by awarding fees in excess of respondents' contractual obligation with their attorney and by awarding fees for administrative proceedings not part of the condemnation proceedings. We affirm.

## FACTS

The condemnation proceedings for construction of the Wilmarth Line in southern Minnesota commenced in May 1979 with appellants' filing of a petition for eminent domain. Appellants sought right-of-way easements for a 76-mile, 1000 megawatt transmission line known as the Wilmarth Line. The Southern Landowners' Alliance of Minnesota, Inc. was organized as a nonprofit corporation in May 1979. SLAM, consisting of various affected landowners, hired St. Paul lawyer Kenneth E. Tilsen to challenge the condemnation petitions. Tilsen obtained authorization forms from about 170 landowners before commencing representation of these landowners. Tilsen represented the interests of the affected property owners at various proceedings over the course of five years. He only formally represented SLAM as an intervenor at administrative proceedings before the Minnesota Energy Agency. Tilsen's work included preparation and participation at the following:

1. Proceedings before the district courts in Blue Earth, LeSueur, Sibley and Scott Counties where condemnation petitions had been filed against landowners.

2. Proceedings before the Minnesota Supreme Court in *Cooperative Power Association v. Eaton,* 284 N.W.2d 395 (Minn. 1979).

3. Proceedings before a special three-judge panel appointed by the Minnesota Supreme Court in *Eaton,* to handle litigation relative to the Wilmarth Line.

4. Proceedings before the Minnesota Supreme Court in *In Re Wilmarth Line of CU Project,* 299 N.W.2d 731 (Minn.1980) (*Wilmarth I*).

5. Reconvened proceedings (contested case hearings) before the Minnesota Energy Agency (MEA), as directed by the Minnesota Supreme Court in *Wilmarth I* and as ordered by the three-judge panel to determine the need for a high transmission line.

After the MEA found that no need existed for 1000 megawatts of power in appel-

lants' system, appellants filed notices of discontinuance and dismissal, dismissing the condemnation actions against all respondents-landowners, on or about December 2, 1983. In January 1984, respondents-landowners moved the court overseeing these condemnation proceedings for attorney's fees and costs as allowed in Minn. Stat. § 117.195, subd. 2 (1982). Filed with the motion for fees and expenses were six notices of discontinuance and dismissal received by attorney Tilsen for respondents in Blue Earth, Carver, LeSueur, Scott and Sibley Counties.

At the hearing on this motion, attorneys for each party and their expert witnesses testified as to a reasonable fee, an appropriate hourly rate, and the hours expended in the condemnation proceedings. Respondents submitted the briefs Tilsen had prepared for the two Minnesota Supreme Court proceedings, a summary of proceedings regarding the Wilmarth Line, a reconstructed time record, a statement of amounts received, his own affidavit and deposition regarding these matters, the decisions of the courts and the Minnesota Energy Agency, and other materials. Appellants submitted SLAM'S articles of incorporation, affidavits of attorneys regarding a reasonable fee and other materials. In addition, both parties briefed the issues.

The trial court found that attorney Tilsen represented 170 landowners and SLAM (which it found was composed of landowners affected by the condemnation proceedings) in district court, supreme court and agency proceedings relative to the proposed Wilmarth Line; that counsel agreed to represent SLAM as a community service with fees to be based on a minimum amount to cover expenses; that he received $25,349.16 from SLAM for fees and expenses—the total sum raised by that organization; that compensable time was 2960 hours (2904 for legal services and 56 hours for travel); and that a reasonable fee for his legal services was $125.00 an hour and $50.00 an hour for his travel time.

The trial court concluded that Tilsen represented "owners" within the meaning of Minn.Stat. § 117.195, subd. 2; that his reasonable compensation was not limited to the fee arrangement he had with respondents; that the reconvened MEA proceedings were an inherent part of the condemnation proceedings in this matter; and that Tilsen was entitled to reasonable attorney's fees and costs in the amount of $340,-450.84.

## ISSUES

1. Did the trial court err in concluding that counsel represented "owners" within the meaning of Minn.Stat. § 117.195, subd. 2?

2. Did the trial court err in its award of fees and expenses to counsel?

3. Were the reconvened proceedings before the MEA a part of the condemnation proceedings?

## ANALYSIS

1. *"Owners" Represented:*

The statute at issue here is Minn.Stat. § 117.195, subd. 2 (1982) which states in part:

When the proceeding is dismissed for nonpayment or discontinued by the petitioner, the owner may recover from the petitioner reasonable costs and expenses including attorneys' fees.

Minn.Stat. § 117.025 (1982) defines owner as follows:

"Owner" includes all persons interested in such property as proprietors, tenants, life estate holders, encumbrancers, or otherwise.

Appellants, the utility cooperatives who sought condemnation of certain land to construct a high voltage power line, discontinued and dismissed the petitions filed against respondents-landowners. The respondents, landowners whose land was directly affected by the condemnation proceedings, sought "reasonable costs and expenses, including attorneys' fees" under Minn.Stat. § 117.195, subd. 2.

On appeal, appellants claim that respondents may not recover fees for work per-

formed by attorney Tilsen since he did not represent individual landowners, but rather he represented SLAM, a nonprofit corporation that owns no land. Appellants note that Tilsen had a fee arrangement with SLAM, but not with landowners. They further assert that Tilsen admitted that he had no expectation of payment from individual landowners.

The trial court found:

> Kenneth E. Tilsen, Attorney at Law, represents approximately 170 landowners and the Southern Landowners' Alliance of Minnesota, Inc. (S.L.A.M.). S.L.A.M. was incorporated on May 17, 1979, as a Minnesota non-profit corporation for the purposes, among others, of protecting "our communities' environment from unnecessary disspoilment through construction and maintenance of electrical generating plants ... (and insuring) that the economic burden imposed upon private property through the construction and maintenance of electrical generating plants and transmission lines is borne by the public utility company which constructs and maintains same...."

The trial court also found:

> On or about May 16, 1979, a number of landowners along the Wilmarth Line organized themselves into S.L.A.M. and requested representation by Kenneth E. Tilsen. Mr. Tilsen agreed and prepared authorizations, approximately 170 of which were signed by individual landowners.
>
> *All District Court and Supreme Court proceedings were in the names of the individual landowners and Mr. Tilsen appeared on behalf of "respondents/landowners."* (Emphasis added.)

Based on these and other findings, the trial court concluded: "Mr. Tilsen represented 'owners' throughout the eminent domain proceedings."

■ Our standard of review is narrow here. "Findings of fact shall not be set aside unless clearly erroneous." Minn.R. Civ.P. 52.01. The trial court's finding is supported by Tilsen's testimony, exhibits, the record of the proceedings before the special three-judge panel, the notices of discontinuance and dismissal filed with the motion and by other evidence. We note that Tilsen testified that he directly represented the landowners on all aspects of the condemnation proceedings. Only in the proceedings before the MEA did he file a petition to intervene on behalf of SLAM without naming individual landowners. The choice of filing the intervention petition in the name of SLAM—rather than individual landowners' names—should not be fatal to the claim for attorney's fees. SLAM does not own affected land, however, the trial court found Tilsen represented "owners" throughout the eminent domain proceedings which included the reconvened hearings before the MEA. The Minnesota Supreme Court noted in *No Power Line, Inc. v. Minnesota Environmental Quality Council,* 311 Minn. 330, 250 N.W.2d 158 (1976), that a court should look beyond an organization to its membership to determine who is represented. *Id.* at 334, 250 N.W.2d at 160. The trial court's finding that SLAM is composed of affected landowners whom Tilsen represented at the reconvened MEA proceedings is supported by the evidence and is not clearly erroneous.

### 2. *Award of fees:*

Our scope of review is narrow here:

> This court, in the *Paulson* case [290 Minn. 371, 188 N.W.2d 424 (1971)], adopted the scope of review contained in Minn.R.Civ.P. 52.01, that "findings of fact shall not be set aside unless clearly erroneous." It further expanded upon that standard by stating that the rule enunciates the broadest scope of review exercised by an appellate court. Consequently, "[w]e will reverse a trial court's findings only if, on a review of the entire record, we are left with a firm and definite conviction that a mistake has been made." *Roy Matson Truck Lines, Inc. v. Michelin Tire Corp.,* 277 N.W.2d 361, 361–62 (Minn.1979) * * *.

*City of Minnetonka v. Carlson*, 298 N.W.2d 763, 766 (Minn.1980) (*Carlson II*).

■ Appellants assert that Tilsen should recover no more in fees than he would have under the agreement he entered with SLAM. *Carlson II* rejects the notion that any prior fee arrangement controls an award of fees under Minn.Stat. § 117.195, subd. 2. In fact, *Carlson II* requires us, as an appellate court, "to examine the award of attorneys fees *to satisfy itself that the district court properly did not regard the contingent fee arrangement as the most controlling factor." Id.* (emphasis added). Instead, any award of fees under Minn.Stat. § 117.195 requires the consideration of the following relevant factors: (1) the time and labor required; (2) the nature and difficulty of responsibility assumed; (3) the amount involved and result obtained; (4) the fees customarily charged for similar legal services; (5) the experience, reputation and ability of counsel; and (6) the fee arrangement existing between counsel and client. *See City of Minnetonka v. Carlson*, 265 N.W.2d 205, 206 (Minn. 1978) (Carlson I).

In addition to the parties' testimony on Tilsen's motion for fees, the trial court considered expert testimony and the entire record of proceedings. The trial court discussed each of the *Carlson I* factors in detail in its memorandum. The transcript of the hearing and the affidavits support the trial court memorandum and decision that this case involved many novel and complex issues and that Tilsen obtained favorable results for his clients in all proceedings. We reject appellants' claim that Tilsen's fees are limited by his fee arrangement with SLAM and hold that the district court properly considered the fee arrangement between Tilsen and SLAM as only one factor, not the controlling factor, in determining a proper award of fees.

Appellants did not object to Tilsen's record of hours spent on the condemnation proceedings. Tilsen submitted a reconstructed time record indicating that he put 2960 hours into representing the landowners in these proceedings (1491 hours were spent representing landowners at the MEA hearings).

Appellants contest the hourly rate used by the trial court. The court awarded Tilsen his requested hourly rate of $125 per hour for legal services, with the reduced rate of $50 per hour for travel time. Tilsen has practiced law in the Twin Cities for 34 years. He practiced law with the firm of Robins, Zelle and Lyons for 15 years before becoming a sole practitioner. He was a managing partner at the time he left the firm. Tilsen testified that in other condemnation cases he earned fees in excess of $125 per hour, under a contingency fee arrangement. Tilsen has extensive appellate experience, experience in complex litigation including condemnation proceedings, experience in complex real estate matters and experience in other areas including criminal law.

Tilsen's expert, Vincent P. Courtney, a St. Paul attorney engaged in general practice for 38 years, testified that $125 was a reasonable hourly rate for Tilsen's work. Courtney based this conclusion on his analysis of the type and quality of services rendered, the *Carlson I* factors and DR–106 of the former Code of Professional Responsibility. Courtney further testified that $370,000 was a reasonable fee for Tilsen's services, which consumed much of his time and prevented him from engaging in other representation for substantial periods of time. Courtney specifically noted that Tilsen was "outstanding in his briefing work" and he exhibited "tenacity" throughout the proceedings. In determining a reasonable hourly rate, Courtney told the court that he had relied, in part, on an exhibit filed in *Rajender v. University of Minnesota*, 546 F.Supp. 158, 167 (D.Minn. 1982), *rev'd on other grounds*, 730 F.2d 1110 (8th Cir.1984). This exhibit was admitted as evidence of Courtney's credibility. It listed the fees of senior attorneys in Twin Cities law firms for the period of 1980–81. The fees ranged from $130 per hour to $300 per hour, with a median of $150 per hour. Courtney's own fees ranged from $80 per hour in 1979 to $110

per hour in 1984 for his work in trust, estates and probate, although he engaged in some condemnation work.

Appellants' experts testified that reasonable fees were in the area of $75–$90 per hour. Appellants filed no motion for amended findings. They conceded that Tilsen spent 2960 hours on the Wilmarth Line action.

■ We also note that Tilsen's simultaneous representation of approximately 170 landowners was no simple feat. In addition, if each landowner had sought and obtained separate representation, the total fees awarded against appellants could have exceeded those awarded here. Several landowners whose attorneys were much less active than Tilsen in these proceedings were awarded fees between $5,000 and $10,000. We conclude that the trial court did not err in calculating and determining an appropriate award of fees.

### 3. *MEA Proceedings:*

Appellants claim that the fees attributable to the reconvened MEA proceedings are not recoverable under Minn.Stat. § 117.195 because the agency proceedings are not a part of the eminent domain "proceeding."

■ The district court concluded that these proceedings were an inherent part of the condemnation proceedings because SLAM's participation was prompted by the supreme court decision in *Wilmarth I,* which required input and participation of the landowners. The district court further noted SLAM's petition for leave to intervene at the MEA proceedings stated that SLAM "is an association of landowners who own property which will be directly affected by and concerned with the proposed Wilmarth Line." Appellants made no objection and the petition was granted. We agree with that result.

The initial need hearing occurred before the route was selected and the condemnation petitions were filed. However, because of defects in the notice given prior to the certificate of need proceedings, the Minnesota Supreme Court found it neces-

sary to reconvene these proceedings *after* the route had been selected and the condemnation petitions had been filed. *See Wilmarth I.* This case is apparently unique because of the order in which these events occurred. Here, the Minnesota Supreme Court specifically fashioned a remedy to address the landowners' grievances. Agency proceedings were *reconvened* to determine the limited issue of need for 1000 megawatts of power. *See Wilmarth I,* 299 N.W.2d at 736–37. The supreme court specifically directed that the affected landowners be given an opportunity to present their evidence on this vital issue which would determine whether a taking of land could be justified:

> We remand the matter to the district court with instructions to require the MEA to conduct another need hearing following proper publication of notice. We do so because of our concern for the public's right to be involved in the making of energy decisions and *particularly the rights of landowners whose property could be affected by such determinations.* As we have indicated, the trial court at the time of the condemnation proceedings will normally have a very limited role in determining the question of public necessity for the taking. Thus, *it is important that landowners be given an opportunity to present their evidence* on such a vital issue, and the only reasonable opportunity to do so occurs at the need hearing.

*Id.* at 736 (emphasis supplied). Based on this directive, SLAM petitioned for leave to intervene at the reconvened need hearings. Appellants filed no objections and the agency granted the petition. Because the reconvened need hearings occurred *after* the condemnation action was commenced, the supreme court specifically limited the scope of these hearings. *See Wilmarth I,* 299 N.W.2d at 736–37.

Appellants cite the North Dakota case of *United Power Association v. Moxness,* 267 N.W.2d 814 (N.D.1978), as controlling. *Moxness* does not control here because of differences in Minnesota condemnation pro-

ceedings and because landowners here only seek fees and expenses for participation in reconvened hearings occurring after the condemnation petitions were filed—not for participation in the initial hearings before any course of action was chosen. The trial court aptly distinguished the *Moxness* case in its memorandum stating:

> The North Dakota case is of limited precedential value to this case. Nevertheless, it is significant to note that court's reasoning in denying attorneys' fees for the administrative hearings. The landowners in *Moxness* argued that the administrative hearings on jurisdiction and site compatibility had become a part of or replaced judicial determination of use and necessity under the eminent domain statute. That court noted that the North Dakota eminent domain statute provided the court with discretion to award attorneys' fees "for all judicial proceedings." *Id.* at 817. The court concluded that the judicial determination of use and necessity had not been supplanted or supplemented by the administrative determination. On the contrary, the administrative hearings and judicial proceedings "serve[d] entirely different and unrelated functions." *Id.*

> In contrast, the Minnesota Supreme Court stated that decisions of the MEA and the Environmental Quality Council were "conclusive as to the public necessity for the project in general." *Cooperative Power Association v. Eaton,* 284 N.W.2d 395, 397 (Minn.1979). The significance of the administrative decision is not reduced by the landowners' ability to litigate the limited issue of whether their specific property interests are necessary to accomplish the general project. This was elucidated by the *Eaton* court: "[T]o conclude that [the administrative hearings] were a mere guide to a district court's ruling on necessity ... [is] an absurd result [and] is presumed to be unintended by the legislature, and thus should be avoided in construing the pertinent statutory provisions." *Id.* at 397 n.6.

This Court also finds it significant that the administrative hearings in question were "reconvened" hearings. They were mandated by the Supreme Court and directly affected the progress of the eminent domain action. *See In Re Wilmarth Line of CU Project,* 299 N.W.2d 731, 736 (Minn.1980). The hearings were reconvened during the eminent domain action. An administrative hearing preceding the petition for eminent domain, on the other hand, would not have become part of the "proceeding," because the proceeding is not initiated until the filing of the petition. *State by Spannaus v. Hopf,* 323 N.W.2d 746 (Minn. 1982); Minn.Stat. § 117.055 (1982).

We are not deciding here that any other landowners may appear and argue a certificate of need and obtain fees under Minn. Stat. § 117.195, subd. 2. Our decision, that the reconvened MEA proceedings constituted part of the condemnation proceedings, is limited to the facts of this case.

## DECISION

The trial court did not err or abuse its discretion in awarding Tilsen attorney's fees and expenses for his representation of numerous landowners whose property was affected by the proposed Wilmarth Line. The reconvened MEA proceedings constituted a part of the condemnation proceedings in this case and Tilsen's representation of SLAM actually constituted representation of affected landowners within the meaning of Minn.Stat. § 117.195, subd. 2. We affirm the judgment awarding Tilsen fees and expenses of $340,450.84.

Affirmed.