## WALTER KLAUS v. MINNESOTA STATE ETHICS COMMISSION AND OTHERS.

244 N. W. 2d 672.

July 30, 1976—No. 45475.

*Hall & Swanson, Dale G. Swanson,* and *Clinton Hall,* for appellant.

*Peter W. Sipkins,* Solicitor General, *Joan K. Swartz,* Special Assistant Attorney General, and *Jonathan H. Morgan,* Special Attorney, for respondents commission and attorney general.

OTIS, JUSTICE.

This is an action brought by a candidate for the state legislature challenging the constitutionality of the disclosure provisions of L. 1974, c. 470, the so-called "Ethics in Government" statute. The trial court mandated compliance and we affirm.

In 1974, appellant, Walter Klaus, filed for reelection to retain his seat as a member of the house from representative district 25A. He refused to comply with the provisions of Minn. St. 10A.09 which required him to file a statement of economic interest although he was directed to do so by the Minnesota State Ethics Commission. Thereafter he instituted a declaratory judgment action in the District Court of Ramsey County. On a motion for summary judgment the court sustained the constitutionality of the statute and ordered appellant to comply.[1] He thereupon appealed to this court.

As it relates to these proceedings, Minn. St. 1974, § 10A.09, subds. 1 and 5, require appellant as a candidate for elective office to file with the State Ethics Commission a statement of economic interest in the following form:

---

[1] Appellant did send a mailing to constituents in July 1974 in which he said, among other things: "Under this law, [Minn. St. 1974, § 10A.09, subd. 5(c)], I would have to tell the Commission, upon filing for reelection, that I am a farmer of Route 1, Farmington, a legislator, and a Director of the State Bank of Hampton. I would inform them, also, that I own real estate in Farmington, Vermillion and Marshan in Dakota County. This is what the law would require of me."

"(a)   His name, address, occupation and principal place of business;

"(b)   The name of each business with which he is associated and the nature of that association; and

"(c)   A listing of all real property within the state, excluding homestead property, in which he has a fee simple interest, a contract for deed or an option to buy, whether direct or indirect, and which interest is valued in excess of $2,500. The filings shall indicate the municipality, if any, and the county wherein the property is located." [2]

The State Ethics Commission drafted a form, with instructions, for those governed by the statute. (EC form 3.)

As to compensation, the form states:

"List all sources from which registrant receives compensation in excess of $50 in any month, other than for actual and reasonable expenses, as director, officer, owner, member, partner, employer, or employee. Do NOT include amount of compensation."

The corresponding instruction reads, in part:

" 'Source of compensation' includes the name of the corporation, partnership, or other entity from which the registrant receives payment in compensation, or in the case of a registrant who is self-employed, the name of the proprietorship or description of the occupation in which he is self-employed (e. g. farming, practice of law as sole proprietor.)

" 'Compensation' means every kind of compensation for labor or personal services of every kind from any private or public employment, office, position, or occupation, but does not include payments in compensation made by any entity to a self-employed individual in his capacity as a self-employed individual."

As to securities, the form states:

"List those corporations or other entities in which registrant

---

[2] The statute also requires incumbents to file such a statement but appellant does not challenge the validity of that provision, Minn. St. 10A.09, subd. 7.

holds securities worth $2,500 or more at fair market value. Do NOT list value of securities."

The instruction reads, in part:

"List the name and address of any corporation, cooperative, partnership, or other association in which the registrant holds securities worth $2,500 or more at fair market value, and include the type of securities, i. e. stock, share, bond, warrant, option, pledge, note, mortgage, debenture, lease, or commercial paper. Include any securities held by any trust of which the registrant is either a trustee or beneficiary, but do NOT include insurance policies or account interests in banks and other savings institutions. If the stock is listed on one of the national exchanges and the address of the corporation is not known, list the exchange. For unlisted stocks the address of the corporation must be included."

As to real property, the form states:

"Indicate the location of all real property within Minnesota, excluding homestead property, in which registrant has a fee simple interest, a contract for deed, or an option to buy, whether direct or indirect, and in which the registrant's interest is valued in excess of $2,500. Do NOT include the value of the property."

The instruction reads, in part:

"The purpose of this section is to determine the *location only* of any real property in Minnesota in which the individual has an interest valued in excess of $2,500. Do NOT list homestead property and do NOT include the value of the interest. The market value of the property shown on the property tax statement should be used in calculating the amount of interest held. For each deed or document held in which the interest is over $2,500, make a separate listing, except where there are multiple deeds for the same piece of property."

1. At the November 5, 1974, general election, appellant was defeated for reelection. Consequently the issues litigated appear

to be moot. Nevertheless, because of time limitations between filing and election dates, the problems presented are likely to reoccur without an opportunity for resolution. The matter has been vigorously presented to both the trial court and this court in an adversary manner. Appellant is exposed to the possibility of a misdemeanor charge under Minn. St. 10A.09, subd. 4, as well as to the sanctions of contempt for failure to obey the mandatory injunction of the trial court. Under these circumstances it is appropriate that we decide the constitutional issues raised by appellant. Davis v. Davis, 297 Minn. 187, 210 N. W. 2d 221 (1973).

2. Appellant argues that the statute compelling a disclosure of economic interest is an unconstitutional invasion of his right to privacy; that there is no compelling state interest which justifies the statute; that the statute is not related to the ends sought to be obtained; that there are less drastic means for accomplishing the state's legitimate interests; that the statute is an unconstitutional infringement of appellant's first amendment rights; and that the disclosure requirements impose on him an unconstitutional property qualification in violation of Minn. Const. art. 1, § 17.

Similar claims have been considered and rejected by other courts. After disapproving a statute requiring disclosure of financial interests by public officials in City of Carmel-by-the-Sea v. Young, 2 Cal. 3d 259, 85 Cal. Rptr. 1, 466 P. 2d 225, 37 A. L. R. 3d 1313 (1970), a subsequent disclosure statute was approved by the California Supreme Court in County of Nevada v. MacMillen, 11 Cal. 3d 662, 114 Cal. Rptr. 345, 522 P. 2d 1345 (1974). The revised statute required public officials to disclose economic interests in which they had an investment in excess of $1,000, real property with a value in excess of $1,000, and the source of income or loans in excess of $250 in any given year. The court observed, "The public's right to know of matters which might bring about a conflict of interest between the public employment and the private financial interests of those holding public office is a laudable and proper legislative concern and pur-

pose." 11 Cal. 3d 671, note 7, 114 Cal. Rptr. 350, 522 P. 2d 1350. After reviewing the authorities, the California court held:

"* * * These cases support our view that neither the right to privacy, nor the right to seek and hold public office, must inevitably prevail over the right of the public to an honest and impartial government." 11 Cal. 3d 672, 114 Cal. Rptr. 351, 522 P. 2d 1351.

The Illinois Supreme Court has reached a similar result in Stein v. Howlett, 52 Ill. 2d 570, 289 N. E. 2d 409 (1972), appeal dismissed, 412 U. S. 925, 93 S. Ct. 2750, 37 L. ed. 2d 152 (1973), and Illinois State Employees Association v. Walker, 57 Ill. 2d 512, 315 N. E. 2d 9, certiorari denied, 419 U. S. 1058, 95 S. Ct. 642, 42 L. ed. 2d 656 (1974). That court discerned an intention to prevent conflicts of interests between the government and its officers and to instill in the public, trust and confidence in its officials. The contention that the provisions were an unconstitutional invasion of privacy was rejected. The Maryland court in Montgomery County v. Walsh, 274 Md. 502, 336 A. 2d 97 (1975), emphasized the necessity for avoiding not only actual conflicts of financial interests but also the appearance of conflicts, and stated that "* * * such legislation [requiring financial disclosure] seeks to foster a climate of honesty perceptible by the public at large." 274 Md. 514, 336 A. 2d 106.

In sustaining a similar measure, adopted by initiative, against the contention that it invaded a candidate's right of privacy, the court noted in Fritz v. Gorton, 83 Wash. 2d 275, 296, 517 P. 2d 911, 924, appeal dismissed, 417 U. S. 902, 94 S. Ct. 2596, 41 L. ed. 2d 208 (1974) that the measure elicited information bearing on a candidate's fitness for office which might not otherwise surface to "influence the electorate's evaluative processes" even in the heat of a campaign.

Recently the Supreme Court of Wisconsin adopted and construed as a part of its judicial code of ethics a disclosure rule governing judges which was attacked as an overbroad invasion of

privacy. The court sustained the rule in In re Kading, 70 Wis. 2d 508, 525, 235 N. W. 2d 409, 417 (1975), with these comments:

"* * * It is the fact that Judge Kading is not solely a private citizen. Judge Kading is by voluntary choice a public official. While public officials, of course, do not waive their constitutional rights, they are nevertheless set apart from other members of society in terms of certain rights, as the law on libel makes clear. One who willingly puts himself forward into the public arena, and accepts publicly conferred benefits after election to public office, is legitimately much more subject to reasonable scrutiny and exposure than a purely private individual.

\* \* \* \* \*

"There are compelling public interests behind the adoption of Rule 17. The first is to assure the impartiality and honesty of the state judiciary. The second is to instill confidence in the public in the integrity and neutrality of their judges. The third is to inform the public of economic interests of judges which might present a conflict of interest. Taken together, these paramount public interests are enough to subordinate the assumed right of a public official to be free from compulsory economic disclosure."

The considerations which prompt us to sustain the "Ethics in Government" statute are stated by the United States Supreme Court in Buckley v. Valeo, 424 U. S. 1, 14, 96 S. Ct. 612, 632, 46 L. ed. 2d 659, 685 (1976), as follows:

"* * * In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential, for the identities of those who are elected will inevitably shape the course that we follow as a nation."

As other courts have pointed out, one who volunteers himself as a candidate for public office becomes thereby a public figure and is subjected to greater scrutiny as he aspires for positions of higher responsibility. Even the most conscientious candidate is not as well qualified to assess his own impartiality where potential conflicts of interest may emerge as are detached mem-

bers of the public. In the words of Mr. Justice Brandeis as quoted in Buckley, "Publicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman." 424 U. S. 67, 96 S. Ct. 658, 46 L. ed. 2d 715.

Nothing in our statute requires a candidate to disclose his net worth or the amount of his income, information which is traditionally personal and privileged. The statute simply requires that a person seeking public office make available to those whose vote he seeks information regarding the property interests which he holds and which, if elected, he might be expected to protect. Not only does such information permit the electorate to obtain some insight into a candidate's potential conflicts of interest, but inevitably the disclosure itself tends to inhibit the candidate, if elected, from resolving in his own favor conflicts which otherwise would remain undisclosed.

We believe that the nature and extent of the disclosures required by statute are reasonable and proper, and that whatever invasion of privacy may result does not deprive a candidate of any protected constitutional right.

Nor do we find any merit in appellant's contention that the disclosure statute imposes a property qualification prohibited by Minn. Const. art. 1, § 17,[3] or imposes a condition on seeking public office prohibited by Minn. Const. art. 7, § 6.[4] The statute

[3] Minn. Const. art. 1, § 17, provides as follows: "No religious test or amount of property shall be required as a qualification for any office of public trust in the state. No religious test or amount of property shall be required as a qualification of any voter at any election in this state; nor shall any person be rendered incompetent to give evidence in any court of law or equity in consequence of his opinion upon the subject of religion."

[4] Minn. Const. art. 7, § 6, provides as follows: "Every person who by the provisions of this article is entitled to vote at any election and is 21 years of age is eligible for any office elective by the people in the district wherein he has resided 30 days previous to the election, except as otherwise provided in this constitution, or the constitution and law of the United States."

in no respect requires a candidate to be a property owner in order to seek or hold office, and failure to comply with the statute does not, in any manner, restrict a candidate's right to run for office. There is nothing in the statute which makes the filing of a financial statement a prerequisite to securing election. The statute simply imposes penalties for failing to comply. Accordingly the judgment of the trial court is affirmed.

Affirmed.

MR. JUSTICE TODD took no part in the consideration or decision of this case.