**David Pearce DEMERS, Respondent,**

v.

**CITY OF MINNEAPOLIS, Appellant.**

**No. CX–90–198.**

Supreme Court of Minnesota.

April 19, 1991.

Robert J. Alfton, Minneapolis City Atty., Floyd B. Olson, Deputy City Atty., Minneapolis, for appellant.

Mark R. Anfinson, Minneapolis, for respondent.

Carla J. Heyl, St. Paul, amicus for League of Minnesota Cities.

WAHL, Justice.

This appeal raises the issue as to whether the identity of complainants on nonpending and noncurrent police department internal affairs complaint forms is public government data under the Minnesota Government Data Practices Act (Minn.Stat. §§ 13.01—.90) [MGDPA]. The trial court and the court of appeals held that it is. The City of Minneapolis (city) appeals that determination as well as the determination that the city may not assess any charge for plaintiff's inspection of the complaint forms and disposition statements and may only charge actual cost for retrieving, compiling and copying complaint forms and disposition statements if copies of the data are requested. We affirm.

### I.

The facts of the case are undisputed. Respondent, David Demers, is a social science graduate student at the University of Minnesota. On March 21, 1989, Demers wrote a letter to Minneapolis Police Chief John Laux, requesting access to or copies of Internal Affairs Complaint Forms (MPD 6020) filed during the previous 10 years and to the final dispositions of those complaints. His request excluded forms pertaining to current or pending complaints.

The Minneapolis City Attorney advised respondent, by letter dated May 1, 1989, that for the years 1978 to 1988, there were approximately 1,764 Internal Affairs Division files, that retrieval cost would be approximately $1,500 (150 hours) and that his request involved three pages from each file, copies of which would cost $1.00 for the first page and $.50 for each additional page. The city also advised respondent that "certain information" on the complaint form is not public information under Minn. Stat. Ch. 13. Respondent wrote back seeking clarification of what portions of the complaint were not public and under what statutory authority. In an exchange of several more letters, the city attorney ultimately advised him that information on the forms regarding the complainant, including complainant's name, address, telephone number, race, sex and date of birth is not public information but that the other information on the complaint form is public information. The city cited Minn.Stat. § 13.43 subd. 2 and this court's decision in *Erickson v. MacArthur*, 414 N.W.2d 406 (Minn.1987) as authority for its position. The city offered to supply Demers with the requested forms with all private information deleted upon receipt of a certified check for $2,322.50.

Respondent subsequently brought an action under Minn.Stat. § 13.08, subd. 4 to compel compliance with the MGDPA. He sought (1) a declaration that the internal affairs complaint forms are public data; (2) the award of costs, disbursements and reasonable attorney's fees; (3) a declaration that the city's proposed charges for copies of the data requested are unreasonable; and (4) a declaration that Demers may inspect the data free of cost.

The trial court concluded that complaint forms in noncurrent and nonpending internal affairs files, including information identifying the complainant, are public information pursuant to Minn.Stat. § 13.03, subd. 1. The trial court also held, pursuant to Minn.Stat. § 13.03, subd. 3, that the city may not assess respondent a charge for inspecting the data and may only charge for the actual cost of retrieving, compiling and copying the data if copies of the data are requested. The court of appeals affirmed the decision of the trial court. *Demers v. City of Minneapolis*, 458 N.W.2d 151 (Minn.App.1990). The city sought further review.

### II.

The primary issue raised on review is whether the identities of persons who file complaints against police officers are public data under the MGDPA. Access to other portions of the complaint form is not in controversy as the city has taken the position throughout the proceeding that most of the information on the form other than the information regarding the complainant is public data. Similarly, respondent has agreed throughout the proceeding that portions of internal affairs files are not public, particularly those data so classified, such as names of juveniles, victims of abuse or co-employees who are complainants. Thus, the sole controversy in this court with regard to the data on the complaint form is the information identifying complainants. We address only the narrow issue of whether that information is public data under the MGDPA.

The MGDPA governs public access to information maintained by governmental agencies in Minnesota. This includes law enforcement agencies. *Erickson*, 414 N.W.2d at 408. The purpose of the MGDPA is to balance the rights of individuals (data subjects) to protect personal information from indiscriminate disclosure with the right of the public to know what the government is doing. *Montgomery Ward v. County of Hennepin*, 450 N.W.2d

299, 307 (Minn.1990) (citing Gemberling & Weissman, *Data Privacy: Everything You Wanted to Know About the Minnesota Government Data Practices Act—From "A" to "Z"*, 8 Wm. Mitchell L.Rev. 573, 575 (1982)). At the heart of the act is the provision that all "government data" shall be public unless otherwise classified by statute, by temporary classification under the MGDPA or by federal law. Minn.Stat. § 13.03, subd. 1 (1988). "Government data" is broadly defined as "all data collected, created, received, maintained or disseminated by any * * * political subdivision * * *." Minn.Stat. § 13.02, subd. 7 (1988). A political subdivision resisting disclosure of data bears the burden of identifying the law preventing its disclosure. Minn.Stat. § 13.03, subd. 3 (1988). The city here maintains that information on the requested complaint forms identifying the complainant is not public because it constitutes private "personnel data" under Minn.Stat. § 13.43, subd. 1.

Section 13.43 governs public access to information concerning former and current government employees. The section sets forth the specific types of personnel data that are public information including "the status of any complaints or charges against the employee, whether or not the complaint or charge resulted in a disciplinary action; and the final disposition of any disciplinary action and supporting documentation * * *." Minn.Stat. § 13.43, subd. 2 (1988). All personnel data not delineated by the statute are private but may be released pursuant to court order. Minn.Stat. § 13.43, subd. 4 (1988). The city argues that because the identity of the complainant is not listed among the other data classified as public personnel data, it is "not public data." [1]

"Personnel data," as defined by Minn.Stat. § 13.43, subd. 1, includes "data on individuals collected because the individual is or was an employee [of the government]." "Data on individuals" is defined

as "all government data in which any individual is or can be identified *as the subject* of that data * * *." Minn.Stat. § 13.02, subd. 5 (1988) (emphasis added). The plain language of these statutes indicates that personnel data are data that identify the employee who is the subject of the data. The police officer, whose identity is public data under section 13.43, is the employee who is the subject of the data. The complainant is neither the employee nor the subject of the data. Accordingly, as held by the trial court and the court of appeals, information identifying the internal affairs complainant is not "personnel data" at all [2]. The legislature did not identify complainant identification as public personnel data because that information is outside the intended scope of the statute.

We further note that section 13.43 classifies some data as private in order to protect the privacy of government employees, not that of individuals who file complaints against them. As discussed by the courts below, the identity of an individual who provides information leading to arrest, who requests law enforcement services or who witnesses a law enforcement action is public information unless disclosure would threaten an individual's safety, identify the victim of criminal sexual conduct or reveal the identity of an undercover law enforcement officer. Minn.Stat. § 13.82, subds. 2(1), 3(b), 4(g), and 10 (1988). There is no indication that the legislature intended to protect the identities of complainants or police informants as a matter of course.

Moreover, the Legislature has created express protection for the identities of some complainants by providing, for example, that data identifying employees who file complaints with the Department of Labor and Industry alleging violations of the fair labor standards act are classified as private data. Minn.Stat. § 13.79 (1988). The legislature could have provided similar express protection for persons filing com-

---

**1.** "Not public data" is defined as "any government data which is classified by statute, federal law, or temporary classification as confidential, private, nonpublic, or protected nonpublic." Minn.Stat. § 13.02, subd. 8a (1988).

**2.** While some of the information on the forms that the city has agreed to release, such as the facts underlying the complaint, may constitute personnel data, that issue is not before us.

plaints against law enforcement officers but elected not to do so. We decline to read such a private classification into Minn. Stat. § 13.43, subd. 4.

The city relies upon this court's decision in *Erickson,* to support its claim that information identifying the internal affairs complainant is not public data. That reliance is misplaced. In *Erickson* we were concerned with the application of Minn.Stat. 13.03, subd. 6, which governs the "discoverability of not public data." That subdivision applies when a political subdivision "opposes discovery of government data or release of data pursuant to court order on the grounds that the data are classified as not public * * *." Minn.Stat. § 13.03, subd. 6 (1988). The data sought in *Erickson* were confidential witness statements, *id.* at 407, and their classification as "not public" was not questioned. Further, the city was "oppos[ing] discovery of government data" on the grounds that it was not public. In the instant case, the city has not established that the disputed information is not public under the MGDPA and it is opposing a simple request for data rather than a discovery request or court order. Minn.Stat. § 13.03, subd. 6 does not apply in these circumstances nor is the privilege of confidentiality implicated as it was in *Erickson.*[3]

The city maintains that public access to complainant identification will deter the filing of internal affairs complaints. The legislature has addressed this concern in its balancing of competing interests and has indicated its intent to protect complainant identities only in cases where the person might suffer serious harm or retaliation. *See* Minn.Stat. §§ 13.79 and 13.82, subd. 10(d) (1988). Furthermore, as acknowledged by the city in this case, the police officer who is the subject of the complaint is informed of the complainant's identity. *Demers,* 458 N.W.2d at 151. *See also Minneapolis Police Department Manual,* Vol. 2, § 2–102.01 ("the employee involved will be * * * given the identity of the complain-

ant as soon as possible"). The city fails to articulate from whom or what the complainant's identity in this instance is being protected. Nor is there any other evidence to indicate that disclosure of the identity of complainants to researchers or other interested persons deters the filing of complaints.

We hold that information identifying complainants on nonpending, noncurrent police department internal affairs complaint forms is public government data under the Minnesota Government Data Practices Act. This holding is dictated by the plain language of the act and by strong public policy considerations. There is a compelling need for public accountability, particularly with law enforcement agencies. As respondent indicates, if complainants' names are kept private, then "there is virtually no way in which citizens, scholars, and the news media can examine whether law enforcement agencies are adequately policing themselves." Indeed, research is a legitimate public purpose under the MGDPA. The act states that "[f]ull convenience and comprehensive accessibility shall be allowed to researchers including historians, genealogists and other scholars to carry out extensive research * * * except as otherwise provided by law." Minn. Stat. § 13.03, subd. 2 (1988).

### III.

■ The trial court and the court of appeals determined that costs may only be assessed to a party seeking access to public data if the party requests copies of the data. On appeal, the city argues that if the data sought to be inspected contains both public and not public data, and the court determines that *Erickson* requires the protection of the identities of complainants on Internal Affairs complaint forms, then copies would be required in order to block out the "not public" portions of the forms. Thus the agency should be allowed to assess fees for copying costs.

---

**3.** In *Erickson,* the police solicited the information and promised the witnesses confidentiality (thus the creation of the statutory privilege). Here, complainants file their complaints on their own volition and there is nothing about that filing process that indicates that the information they offer or their identities will be kept private or confidential.

Minn.Stat. § 13.03, subd. 3 (1990) provides, in part, as follows:

> If a person requests access for the purpose of inspection, the responsible authority may not assess a charge or require the requesting person to pay a fee to inspect data. * * * If a person requests copies or electronic transmittal of the data to the person, the responsible authority may require the requesting person to pay the actual costs of searching for and retrieving governmental data, including the cost of employee time, and for making, certifying, compiling, and electronically transmitting the copies of the data or the data, *but may not charge for separating public from not public data.*

(emphasis added). The purpose of this provision is to prevent the assessment of fees for mere requests to inspect public data. While photocopying might be required to comply with a request for inspection if the data contains both not public and public data, such copying would simply be a function of separating public from not public data for which a political subdivision, under the statute, may not charge. No charge may be assessed for access to or inspection of public data or for the cost of retrieving and compiling documents for inspection. If copies of the data are requested, only the actual cost of retrieving, compiling and copying the data may be charged.

The decision of the court of appeals is affirmed.

Affirmed.