MINNEAPOLIS FEDERATION OF
TEACHERS, AFL–CIO, LOCAL
59, et al., Appellants,

v.

MINNEAPOLIS PUBLIC SCHOOLS,
SPECIAL SCHOOL DISTRICT
NO. 1, Respondent.

Cowles Media Company, d/b/a Star Trib-
une, American Federation of State,
County and Municipal Employees,
Council 14, Local 56, Intervenors, Re-
spondents.

No. C6–93–2013.

Court of Appeals of Minnesota.

Feb. 1, 1994.

Review Denied March 31, 1994.

Roger A. Peterson, Therese M. Dosch, Peterson, Engberg & Peterson, Minneapolis, for Minneapolis Federation of Teachers, AFL–CIO, Local 59, et al.

Eric J. Magnuson, Rider, Bennett, Egan & Arundel, Minneapolis, for Minneapolis Public Schools, Special School Dist. No. 1.

John P. Borger, Thomas S. Schroeder, Faegre & Benson, Minneapolis, for Cowles Media Co. d/b/a Star Tribune.

Gregg M. Corwin, Gregg Corwin & Associates, St. Louis Park, for American Federation of State, County and Municipal Employees, Council 14, Local 56.

Considered and decided by LANSING, P.J., and SCHUMACHER and MULALLY,* JJ.

## OPINION

LANSING, Judge.

Unions for Minneapolis School District employees sought a temporary injunction to prevent release of employee disciplinary information to newspaper reporters. The district court ruled that the unions were unlikely to prevail in their underlying declaratory judgment action challenging the constitutionality of the Minnesota Government Data Practices Act, Minn.Stat. § 13.43, subd. 2(a) (1992), and that neither a disparity of harm to the parties nor public policy compelled issuance of an injunction. The unions appeal, and we affirm.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

Two Star Tribune reporters sent a letter to the Minneapolis Public Schools requesting employee disciplinary information. The letter stated that the reporters had reviewed official minutes of school board meetings and compiled a list of disciplinary actions taken against employees since January 1, 1991, but they needed more specific information.

Citing the Minnesota Data Practices Act, the reporters' letter asked for "detailed information for each suspension, discharge, settlement agreement or other action taken" in designated cases. For each case the newspaper requested the employee's name, the specific charge against the employee, the final disposition of disciplinary actions, and other personnel record information. The letter also requested summary information on the number of employees suspended or discharged in each job category.

The Minneapolis Federation of Teachers, AFL–CIO, Local 59, American Federation of Teachers; Educational Assistants Chapter of Local 59, American Federation of Teachers; and Service Employees International Union, Local 63, AFL–CIO (unions) learned of the Star Tribune's request and filed a petition for a temporary injunction and a complaint for declaratory relief challenging the constitutionality of Minn.Stat. § 13.43, subd. 2(a) (1992). AFSCME and the Star Tribune intervened in the action. Neither AFSCME nor the Minneapolis Public Schools participated in this appeal.

The unions are the exclusive bargaining agents for their members who are employed by the Minneapolis Public Schools, Special School District No. 1. Affidavits by the unions' business agents indicate that of all the disciplinary actions brought against their members, only two of these actions were adjudicated on the merits pursuant to grievance arbitration.

The school district submitted, for the district court's *in camera* inspection, the material it had prepared in response to the Star Tribune's request. Following the district court's order denying the temporary injunction, the union posted a supersedeas bond and obtained a stay of the release of the data pending appeal.

## ISSUES

I. Do the unions have standing to seek a temporary injunction on behalf of their members?

II. Did the district court abuse its discretion in denying the unions' request for a temporary injunction?

## ANALYSIS

### I

As a preliminary issue, we address the Star Tribune's contention that the unions cannot assert their members' privacy rights in the aggregate. This is a challenge to standing, which is jurisdictional, and not waived by the Star Tribune's failure to raise the issue in the district court. *See Annandale Advocate v. City of Annandale*, 435 N.W.2d 24, 27 (Minn.1989).

An organization can derive standing from its members when those members have an interest that is directly at stake. *No Power Line, Inc. v. Minnesota Envtl. Quality Council*, 311 Minn. 330, 334, 250 N.W.2d 158, 160 (1976). An individual whose legitimate interest is "injured in fact" has standing to pursue a claim. *Snyder's Drug Stores v. Minnesota State Bd. of Pharmacy*, 301 Minn. 28, 32, 221 N.W.2d 162, 165 (1974). A party must have more than an abstract concern, and the injury must be more than speculative. *Byrd v. Independent Sch. Dist.*, 495 N.W.2d 226, 231 (Minn.App.), *pet. for rev. denied* (Minn. Apr. 20, 1993). The purpose of the standing doctrine is "to guarantee that there is a sufficient case or controversy between the parties so that the issue is properly and competently presented to the court." *Twin Ports Convalescent v. Minnesota State Bd. of Health*, 257 N.W.2d 343, 346 (Minn. 1977).

Individual union members have demonstrated a legitimate interest in preserving confidentiality of personnel data. The release of disciplinary information that identifies the school employees presents a threat of injury to employees' personal and professional reputations. The unions assert that the

employees' privacy rights in the disciplinary information is particularly significant because it includes disciplinary actions against employees who have not pursued full hearings, but entered into settlements after waiving their hearing rights. Because the members have interests directly at stake, the unions have standing to assert collectively the members' privacy rights.

## II

The standards for issuance and review of a temporary injunction are well established: we consider the relationship of the parties, the relative harm to the parties if the temporary injunction is granted or denied, the likelihood of success on the merits, public policy considerations, and the administrative burdens to supervise or enforce the injunction. *State v. Casino Mktg. Group,* 491 N.W.2d 882, 885 (Minn.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1648, 123 L.Ed.2d 269 (1993); *Dahlberg Bros., Inc. v. Ford Motor Co.,* 272 Minn. 264, 274, 137 N.W.2d 314, 321–22 (1965). A district court's decision to grant or deny a temporary injunction will not be reversed absent an abuse of discretion. *Eakman v. Brutger,* 285 N.W.2d 95, 97 (Minn.1979).

The unions argue that the district court erred by failing to address all five *Dahlberg* factors. *See M.G.M. Liquor Warehouse Int'l v. Forsland,* 371 N.W.2d 75, 77 (Minn.App.1985) (insufficient analysis of *Dahlberg* factors constitutes error). The court discussed the likelihood of success on the merits, the potential harm to the parties, and public policy considerations. Although the district court did not specifically discuss the parties' relationship and the administrative burden on the court, neither did the parties extensively brief those factors. The district court has a responsibility to explain the analysis used in reaching its decision, but this analysis is tied to the relevancy of the issues rather than a formulaic threshold. The district court did not err by focusing on the three *Dahlberg* factors relied on most heavily in the parties' arguments.

A primary factor in determining whether to issue a temporary injunction is the proponent's probability of success in the underlying action. *See Dalco Corp. v. Dixon,* 338 N.W.2d 437, 440 (Minn.1983). The unions' success in the declaratory action depends on the strength of their members' constitutional privacy claim. Minnesota courts have previously recognized a right of informational privacy, which when dealing with private information has two facets: the right not to disclose private information to the government and the right to prevent the government from disclosing private information. *In re Agerter,* 353 N.W.2d 908, 913 (Minn.1984); *see also Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977). Yet, even when private information is at stake, an individual's interest may need to yield to the public interest in that information. *Agerter,* 353 N.W.2d at 913 (public's interest in judge's alcohol problem outweighed judge's interest in keeping matter private).

The right to informational privacy is substantially constricted when the information at issue is public information. The information requested by the Star Tribune is classified as public data by the Minnesota Government Data Practices Act. The Act allows for the release of the following information:

*name;* \* \* \* *job title; job description; education and training background; previous work experience; date of first and last employment;* **the existence and status of any complaints or charges against the employee, whether or not the complaint or charge resulted in a disciplinary action; the final disposition of any disciplinary action together with the specific reasons for the action and data documenting the basis of the action,** excluding data that would identify confidential sources who are employees of the public body; **the terms of any agreement settling administrative or judicial proceedings;** \* \* \*.

Minn.Stat. § 13.43, subd. 2(a) (1992) (emphasis added).

Generally, an individual does not have a privacy right in public information. *See Minnesota Medical Ass'n v. State,* 274 N.W.2d 84, 93–94 (Minn.1978) (holding that

personal rights found in a "guarantee of personal privacy must be limited to those which are 'fundamental' or 'implicit in the concept of ordered liberty' * * *."); *Klaus v. Minnesota State Ethics Comm'n,* 309 Minn. 430, 437, 244 N.W.2d 672, 676 (1976) (rejecting claim that statute requiring disclosure of candidates' property interests violates constitutional privacy right). Courts in three other jurisdictions have determined that public school teachers do not have a right to privacy in their personnel records. *See Klein Indep. Sch. Dist. v. Mattox,* 830 F.2d 576, 581 (5th Cir.1987), *cert. denied,* 485 U.S. 1008, 108 S.Ct. 1473, 99 L.Ed.2d 702 (1988); *Brouillet v. Cowles Publishing Co.,* 114 Wash.2d 788, 798–99, 791 P.2d 526, 531–32 (Wash.1990); *Hovet v. Hebron Pub. Sch. Dist.,* 419 N.W.2d 189, 190–91 (N.D.1988).

At the core of the Data Practices Act is the provision that all "government data" shall be public data unless otherwise classified by statute or other law. Minn.Stat. § 13.03, subd. 1 (1992); *Demers v. City of Minneapolis,* 468 N.W.2d 71, 73 (Minn.1991). Although personnel data is ordinarily private information, that data also becomes public data if classified as such by statute. Minn. Stat. § 13.43, subd. 4 (1992). The information requested is specifically classified by statute as public data. *See* Minn.Stat. § 13.-43, subd. 2(a). Even if the unions' members have some privacy interest in their disciplinary records, the public also has an interest in disciplinary material that relates to an individual's fitness for a particular position. Citizens are rightly concerned about the disciplinary records of those who teach and provide services to their children. These concerns provide a reasonable basis for classifying the disputed material as public data. *See Whalen,* 429 U.S. at 598–99, 97 S.Ct. at 875 (finding statute requiring pharmacists and doctors to report prescriptions of certain drugs was reasonably aimed toward accomplishing goal of minimizing misuse of dangerous drugs and therefore constitutional). The unions will not likely prevail on their informational privacy claim under the federal Constitution.

■ Minnesota can provide greater protection for its citizens under the state constitution than the protection available under the federal Constitution. *Jarvis v. Levine,* 418' N.W.2d 139, 148 (Minn.1988) (identifying an independent right to privacy in Minn. Const. art. I, §§ 1, 2, 10). Minnesota has, however, tended to follow, rather than question, the federal informational privacy cases. *See Agerter,* 353 N.W.2d at 913–914 (discussing and applying principles of Supreme Court informational privacy case); *Minnesota Medical Ass'n,* 274 N.W.2d at 93–94 (same). The unions have failed to show a likelihood of a protected privacy right in the disputed material under the Minnesota Constitution that would inhibit operation of the statute.

The unions alternatively argue that, even if the statute is constitutional, they can still succeed on the merits. They advance three arguments that relate to statutory interpretation.

■ First, they argue that the term "charge" in the Data Practices Act should be interpreted in accordance with the Teacher Tenure Act, which requires that the "charges against a teacher shall be in writing and signed by the person making the same and then filed with the secretary or clerk of the school board * * *." Minn.Stat. § 125.17, subd. 5 (1992). Following this argument, only those charges meeting the requirements of the Teacher Tenure Act would be public data. We reject this argument because it would require this court to apply a provision of a statute dealing with teachers to a statute applying to a broad category of public and private data. There is no apparent legislative intent that the statutes should be interpreted together. The Legislature could have defined "charge" under the Data Practices Act as it is set forth in the Teacher Tenure Act, but it did not. *See Northland Country Club v. Commissioner of Taxation,* 308 Minn. 265, 270–71, 241 N.W.2d 806, 809 (Minn.1976) (presuming that the Legislature's failure to include a term was deliberate).

Second, the unions argue that only those grievances put in writing as required by the employees' collective bargaining agreements should be public data. Following this analysis, if there was no written charge, then there was no valid grievance, and the infor-

**112**

mation is not public data. This argument fails because it seeks to superimpose a contract definition on a statutory term. *See Independent Sch. Dist. No. 877 v. Loberg Plumbing & Heating,* 266 Minn. 426, 434, 123 N.W.2d 793, 799 (1963) (a contract that transgresses public policy or law is void).

Third, the unions argue that Minn.Stat. § 13.43, subd. 2(a) allows for the release of settlement terms only when those agreements settle "administrative or judicial proceedings." This argument also lacks merit. The statute specifically allows for the release of "the final disposition of any disciplinary action" as a separate component from the provision dealing with "the terms of any agreement settling administrative or judicial proceedings." *See* Minn.Stat. § 13.43, subd. 2(a). The information at issue relates to final dispositions of disciplinary matters, and the disciplinary material is public data.

The remaining factors governing injunctive relief do not weigh conclusively in favor of the school employees. We do not weigh lightly the potential harm to the school employees' personal and professional reputations. Even if the material is fully reported, readers may draw inferences of guilt from the publication of employees' names along with the disciplinary charges against them. The Star Tribune faces harm, however, if the names are not released. Without the names of individuals, their story will likely have less credibility and the reporters will have difficulty fully investigating repeated complaints.

Finally, we note that public policy favors releasing the information. The Legislature has already balanced the rights of individuals to protect personal information and the public's right to obtain information about government and decided the disciplinary material should be public data. *Demers,* 468 N.W.2d at 72. An example of the Legislature's balancing to accommodate policy concerns is evident in its decision to make only the "status and existence" of a charge public data before a final disposition occurs. *See Unke v. Independent Sch. Dist. No. 147,* 510 N.W.2d 271 (Minn.App. Jan. 18, 1994). On the two remaining *Dahlberg* factors, the parties have not presented a substantive argu-

ment either before the district court or on appeal that these factors are persuasive.

## DECISION

The district court did not abuse its discretion in denying the unions a temporary injunction. The unions have not shown a likelihood of success on the merits. Although the unions' members may face some harm, public policy considerations favor releasing the information the Legislature has declared to be public data.

**Affirmed.**