LILLEHAUG, Justice
(dissenting).
Because the court decides that public data — images of events that occurred in public, on public transportation — can morph into private data, and thereby become inaccessible to the public, I respectfully dissent. Such a misreading of the Minnesota Government Data Practices Act, Minn.Stat. §§ 13.01-.90 (2014), has the effect of throwing under the bus two of our important democratic values: transparency and accountability.
I.
The facts are undisputed. When you ride a Metro Transit bus, you are in a public place. You, your fellow passengers, your driver, and the activities on the bus itself are being recorded by up to five cameras.
Metro Transit records you for multiple reasons. Recorded images of bus activity are useful to deter misconduct, investigate crime, respond to rider complaints, discipline employees, and defend personal injury and property damage claims. While some riders might be surprised to learn that they are being recorded, Metro Transit’s rationale is that a public bus is a public place. And so it is.
The images Metro Transit records are stored on a hard drive located in the bus. There the images remain, until the hard drive is full, when the oldest images begin to be replaced with newer ones. Like any digital file, the images may be copied onto other media. In this case, the data KSTP-TV (KSTP) seeks are the images moved verbatim from hard drives to digital video disks.
The images on the hard drive are public data from the moment of their electronic creation, and the court so holds. In other words, KSTP seeks only images that were public data when created and maintained on the hard drives.
But Metro Transit contends that the public data are no longer public. Metro Transit’s argument rests on the theory that the data classification changed from public to private when the images were moved from the hard drive to digital disks for use in personnel matters. Put another way, KSTP’s requests were too late; it missed the bus. Unfortunately, the court agrees.
II.
Does the Minnesota law that is the foundation of Minnesotans’ access to their government’s information, such as these images, require such a result? No, it does not.
The entire presumption of the Data Practices Act is that “government-data are public.and are accessible by the public.” Minn.Stat. § 13.01, subd. 3. This presumption is “at the heart” of the Data Practices Act. Demers v. City of Minneapolis, 468 N.W.2d 71, 73 (Minn.1991). We applied this presumption recently when we held that data may remain public under one provision of the Data Practices Act even though the same data are classified as confidential under another provision. Harlow v, Minn. Dep’t of Human Servs., 883 N.W.2d 561, 567-68 (Minn.2016). .
The exception to this presumption of public access on which Metro Transit relies, and on which the majority rests its decision, is for “personnel data,” defined as “government data on individuals maintained because the individual is or was an *352 employee of •... a government entity.” Minn.Stat. § 13.43, subd. 1. I agree with the court and the parties that images of bus passengers and drivers, are, among other things, “data on individuals.” I also agree with the court that the images were created and (at least initially) maintained for'multiple purposes, as I have already discussed. And I agree with the court that the “personnel data” exception applies only if the images are kept for the “single purpose” of personnel matters. But the court has a blind spot when it concludes that images that are already public become private simply because the request for access comes after, rather than before, a personnel matter commences.
Most importantly, the statute says no such thing. Given the presumption of access that is at the heart of the Data Practices Act, one would think that, if the Legislature had wanted to give government entities the right to túrñ public data into private data, it would have said so, clearly and unequivocally. It did not.[1] See Rohmiller v. Hart, 811 N.W.2d 585, 591 (Minn.2012); Genin v.1996 Mercury Marquis, 622 N.W.2d 114, 117 (Minn.2001) (“The rules of construction forbid adding words or meaning to a statute that were intentionally or inadvertently left out.”). Cf. Doe v. Minn. State Bd. of Med. Exam’rs, 435 N.W.2d 45, 50 (Minn.1989) (“[Ajgeney rules cannot classify data' as ‘private’ or make data inaccessible to the public ‘unless there is a state statute or federal law as the basis for the classification.’ ” (quoting Minn. R. 1205.0200, subp. 9 (1987))).
To the contrary, the Data Practices Act sends a strong signal that moving public data from one medium to another, whatever the reason, does not make public data private. The statute provides expressly that, for the purpose of access, “government data” means “all data ... regardless of its physical form, storage media or conditions of use.” Minn.Stat. § 13.02, subd. 7. And it expressly contemplates that public data- in digital form will be moved from medium to medium. See Minn.Stat. § 13.03, subd. 3(e) (“The responsible authority of a government entity that maintains public government data in a computer storage medium shall provide to any person making a request under-this section a copy of any public data contained in that medium, in[1] electronic form, if the government entity can reasonably make the copy or have a copy made.”).
The only portion of the Data Practices Act that deals generally with “[c]hange in classification of data” is Minn.Stat. § 13.03, subd. 4. Four of its five subparts cover dissemination of data among agencies, which is not at issue here. The remaining subpart, (a), is inapplicable here. Subpart (a) says that an entity must change the data classification if it is required to do so to comply with “judicial or administrative rules pertaining to the conduct of legal actions” or with a specific statute applicable to the ■ data. Id. Metro Transit does not rely on subpart (a), and there is no separate judicial, administrative, or statutory requirement. Accordingly, the Data Practices Act contains no general authority, express or implied, for a government entity to turn its public data into private *353 data.[2] .
Minnesota Statutes § 13.03, subd. 9, on which the court relies, does not give any such authority. Rather than empowering entities to make public data private, subdivision 9 empowers data requesters to access data previously classified as private.
Subdivision 9 provides: “Unless otherwise expressly provided by a particular statute, the classification of data is determined by the law applicable to the data at the time a request for access to the data is made, regardless of the* data’s classification at the time it was collected, created, or received.” Minn.Stat. § 13.03, subd. 9. The purpose of this plain and unambiguous language is obvious: the government entity holding the data must apply the Data Practices Act in effect at the time of the request, rather than deny access on the theory that the data was private under prior law. This prevents an entity from obstructing access to public data on the ground that the data used to be private. As explained by commentators (including a former director in the Minnesota Department of Administration), subdivision 9 allows “an act of the Legislature” to make public data that was classified as “not public.” Donald A. Gemberling & Gary A. Weissman, Data Practices at the Cusp of the Millennium, 22 Wm. Mitchell L. Rev. 767, 825 (1996). Subdivision 9 implements — not undermines — the presumption of the Data Practices Act that government data is public.[3]
In this case, the Legislature did not. change the law applicable to the images in any material respect from the time Metro Transit created and began to maintain the images until the time KSTP made its requests for them. KSTP seeks access to the images based on the Data Practices Act in effect at the time of .its request — the very statute the court now misreads.
Nor is the authority to transform public data into private- data found in the portion of the Data Practices Act that, with specific exceptions, makes personnel-data private. Section' 13.43 covers “government data on individuals maintained because the individual is or was an employee of ... a government entity.” Minn.Stat. § 13.43, subd. 1; see Star Tribune Co. v. Univ. of Minn. Bd. of Regents, 683 N.W.2d 274, 279-80 (Minn.2004).
Section 13.43, like all of the exceptions to the public accessibility presumption of the Data Practice Act, assumes that the government data requested is not yet public, See Annandale Advocate v. City of Annandale, 435 N.W.2d 24, 29 (Minn.1989) (“[T]he legislature has expressly indicated that confidential personnel data of government employees shall not become public”) (emphasis added). Certainly it does not say, or even hint, that already-public data may be turned into private data by its mere maintenance for a personnel purpose.
I see absolutely no significance in the fact that the definition of personnel data, Minn.Stat. .§ 13.43, subd. 1, uses the word *354 “maintained” rather than “collected,” “created,” or “received.” Obviously, the Legislature chose the word “maintained” because all data is “maintained,” or kept, after it is first collected, created, or received. That the word “maintained” was employed begs the question whether already-public data necessarily becomes private because it is maintained for a personnel matter.
Any reading of section 13.43 to the effect that a government entity may transform public data into private data by moving it into a personnel file is unreasonable. Imagine a situation where, using a government laptop computer, a government employee generates an indisputably public report. The employee prints off one exact copy[4] and puts it in a government employee’s personnel file. Before the report can be further copied and disseminated, the laptop is destroyed. There is no backup. By Metro Transit’s and the majority’s reasoning, the sole remaining copy — the one in the personnel file — must now be private because it has become “personnel data.” Thus, by the majority’s analysis, the personnel-data exception trumps the bedrock principle of the Data Practices Act that government data is presumed to be public.
Although the court is careful to say that it has tried to read the Data Practices Act so as not to allow the personnel-data exception to swallow the presumption, its decision today will undermine transparency and accountability. I suspect that today’s decision will be taken by some government entities as a free pass to conceal that which should be public. If government data — whether a video, a paper document, or a digital file — might show misconduct, and disclosure might cause embarrassment or worse, then today’s decision enhances the temptation for the entity to stash the data in an employee’s personnel file. What is public becomes private — perhaps forever.[5] Odds are that the now-private data will never see the light of disinfecting sunshine.[6]
To summarize, KSTP requested images of public activity on public buses. All of the images were public from the moment of their creation. The images, generated for multiple purposes, were public data when maintained on hard drives. The images KSTP sought were, are, and remain public regardless of the medium on which they are maintained. Therefore, KSTP had a statutory right to inspect, copy, and broadcast these images for the benefit of its viewers. For these reasons, I would affirm the decision of the court of appeals, which affirmed the decision of the administrative law judge.
GILDEA, Chief Justice
(dissenting).
I join in the dissent of Justice Lillehaug.

. This .is not to say that there is no remedy when a government entity’s "appropriate security safeguards” for private data, Minn.Stat. § 13.05, subd. 5(a)(2), break down and the private data mistakenly is made accessible. The entity must notify individuals when their data has been breached, Minn.Stat. § 13.055, and the remedies include a private cause of action, injunctive relief, administrative penalties, and criminal penalties, Minn.Stat. §§ 13.08, subds. 1-2, 13.085, 13.09. -

. Contrary to the majority’s contention, I do not read subdivision 9 as a "one-way ratchet.” Given the presumption that data is public, it is unlikely that the Legislature would amend the Data Practices Act the other way, that is, to make public data private.

. The alteration or annotation of public data for use in a personnel matter presents an entirely different situation. In such a case, the alterations or annotations might well be private (and could be redacted from the public data) under the personnel-data exception.

. Unlike, for instance, civil investigation data, which can become public when the investigation is no longer active, personnel data becomes public only upon "final disposition of any disciplinary action.” Minn.Stat. § 13.43, subd. 2(a)(5), Only then is access granted to “the specific reasons for the action and data documenting the basis of the action_” Id.

.As Louis Brandéis wrote: "Sunlight is said to be the best of disinfectants; electric light the most efficient policeman.” Louis D. Brandéis, What Publicity Can Do, Harpers Wkly, Dec. 20, 1913, at 10.