356 N.W.2d 846 (1984)
CITY OF NEW ULM, petitioner, Respondent,
v.
Arthur W. SCHULTZ, et al., Appellants,
Northern State Power Company et al., Defendants.
CITY OF NEW ULM, petitioner, Respondent,
v.
Harry N. SOMSEN, Jr., et al., Defendants,
Robert W. Haubrich, et al., Appellants.
Nos. C3-84-566, C5-84-567.
Court of Appeals of Minnesota.
October 30, 1984.
*847 William S. Rosen, St. Paul, for Schultz, et al. and Haubrich.
Hugh T. Nierengarten, New Ulm, for City of New Ulm.
Heard, considered and decided by FOLEY, P.J., and RANDALL and CRIPPEN, JJ.

OPINION
RANDALL, Judge.
The City of New Ulm petitioned for the condemnation of land owned by appellants in order to expand the municipal airport. After a hearing on the petition, the court determined it was necessary for the city to obtain the land in fee simple absolute, and the landowners appealed. We consolidated the separate appeals, and now affirm.

FACTS
Appellants own farm land around the existing New Ulm Municipal Airport which the city has petitioned to condemn for airport expansion. There are no structures on any of the lands affected by this proceeding. The Minnesota Swine Producers Association owns land abutting the property of one appellant. The Association's land has an underground installation. Only an easement in the Association's land was taken, even though it is closer to the proposed new runway than much of appellants' property. Easements only were acquired from the Association because acquisition of the fee would have created hardship for the Association in that it would put the operation out of business. The city contends that taking the fee of appellants' land would not put any farmer out of business since no farm is being taken in its entirety.
The areas taken in fee will continue to be farmed. The city plans to lease the land to farmers on a bid basis. None of the land will be used for airport facilities; rather, it is required to maintain "clear zones" or "transitional zones" which must be maintained around airports. A "clear zone" is limited to activities that require no structures, and a "transitional zone" is similar, except that some structures may be allowed. Some light standards will be erected on the Haubrich and Landsteiner land.
Appellants all plan to continue to use the land for farming and are willing to accept a permanent use restriction rather than give up their full title. Appellants argue that, should the city be allowed to condemn and take fee interest in the land in question, their remaining farms will be odd-shaped, some with triangular outlots and some with inaccessible outlots. The resulting farms will be more difficult and uneconomical to farm. Also, the drain tiling systems of the *848 farms run through the land to be taken. The Schultz farm, at least, may have to be retiled.
The city sought to acquire the fee to appellants' land, instead of clear zone or transitional zone easements, on the advice of various governmental agencies involved in airport planning and design, including the Minnesota Department of Transportation ("MNDOT") and the Federal Aviation Agency. The reason for acquiring the fee interest is that it costs almost as much to acquire such easements as it does to acquire the fee. There was also testimony that the city was thinking of additional, future airport expansions in its decision. The amount of land proposed to be taken is considerably less than the amount of land which could be taken and still be eligible for federal airport assistance fundings; the acquisitions are deemed by the city to be the minimum necessary.

ISSUES
1. Did the trial court err in granting the city's petition to acquire the fee interest in appellants' land?
2. Was the city's action in taking only an easement in the Swine Producers Association land while taking the fee interest in the land of the appellants a denial of equal protection?

ANALYSIS
1. The power of eminent domain is authorized by the Minnesota Constitution, Art. I, § 13, which provides that private property shall not be taken for public use without just compensation therefor. The statutory provisions which govern the exercise of the power provide the procedural framework. After a governmental body has filed a condemnation petition, the court
* * * shall hear all competent evidence offered for or against the granting of the petition * * * If the proposed taking shall appear to be necessary and such as is authorized by law, the court * * * shall appoint * * * commissioners [to ascertain damages].
Minn.Stat. § 117.075 (1982). Thus, the court's task is to determine if the taking is necessary and authorized by law. "Necessary" need not be "absolute or indispensable necessity." The condemning authority need only show that the proposed taking is "reasonably necessary or convenient" for furtherance of the end in view. Northern States Power Co. v. Oslund, 236 Minn. 135, 137, 51 N.W.2d 808, 809 (1952); Blue Earth County v. Stauffenberg, 264 N.W.2d 647, 650 (Minn.1978). The statute also provides that the court may, in its discretion,
limit the title or easement to be acquired by the petitioner by defining the rights and privileges which the owner of any of the lands may exercise therein in subordination to the public uses to which it is appropriated.
Minn.Stat. § 117.075 (1982). Appellants urge us to find that the court should have used its power to limit the city to an easement over their property, or, in the alternative, should have denied the petition as asking for more than was necessary for the public use.
The trial court's power to limit the title or easement the city acquires, however, is, by statute, subject to the trial court's discretion. As long as the record supports the acquisition of the fee as "reasonably necessary or convenient" for furtherance of a public purpose, the trial court's decision not to exercise its power to limit the city's title is not an abuse of its discretion.
As to whether the acquisition of the fee was necessary for a public purpose, the legislature has determined that
The acquisition of any lands for the purpose of establishing airports or other air navigation facilities; * * * [and] the acquisition of airport protection privileges * * * are hereby declared to be public, governmental, and municipal functions, exercised for a public purpose, and matters of public necessity, and such lands * * * acquired and used by the state * * for [such] purposes * * * shall and are *849 hereby declared to be acquired * * * as a matter of public necessity.
Minn.Stat. § 360.033 (1982). Thus, appellants are effectively precluded from litigating whether the taking of their lands in fee was a public necessity. The supreme court has held that this statute does not mandate a higher judicial finding of public necessity than a showing that the taking is a reasonable means to an end. City of Pipestone v. Halbersma, 294 N.W.2d 271, 274 (Minn. 1980). In that case, which also involved a taking for municipal airport expansion, the court found a city council resolution that a taking of the fee was necessary to accomplish the expansion to be prima facie evidence of public use and of the taking as reasonably necessary to accomplish that use. 294 N.W.2d at 274. To the extent that appellants' arguments are an attempt to dispute whether the taking of the fee rather than an easement was required as a matter of "public necessity," those arguments fail.
Appellants point to the decision of Cooperative Power Association v. Eaton, 284 N.W.2d 395 (Minn.1979), as authority for the proposition that the landowners should be entitled to litigate "[w]hether the scope of the easements requested by respondents is broader than necessary to accomplish the [general project for which the interest was taken]." 284 N.W.2d at 399. Appellants did introduce evidence of their own at the hearing on the petition, however, and they did cross-examine respondent's witnesses. The trial court here, unlike that in Co-op. Power, had all the evidence before it when it determined not to exercise its discretion to limit the city's interest. The Supreme Court's edict in Co-op. Power that landowners be allowed to litigate the breadth of the interest sought was complied with here.
Further, the supreme court in Co-op. Power found that the decision of the Minnesota Energy Agency and the Minnesota Environmental Quality Council (the condemning authorities) was "conclusive as to the public necessity for the project in general." 284 N.W.2d at 397 (emphasis added). Here, however, a statute specifically declares that land acquired and used for airport protection privileges is acquired as a matter of public necessity. Minn.Stat. § 360.033 (1982). Thus, not only is the airport expansion in general a matter of public necessity, but so is the acquisition of land for airport protection privileges. In that respect, Co-op. Power is distinguishable. The city need only show that acquiring the fee rather than easements was a reasonable means of acquiring airport protection privileges. The existence of alternatives does not make the decision to take the fee arbitrary. City of Pipestone v. Halbersma, 294 N.W.2d at 274.
The trial court found that acquiring the fee was a reasonable means of ensuring the continuation of clear zones. This conclusion was supported by the engineering studies and FAA documents admitted at trial, as well as by testimony documenting the long planning process for the airport expansion, which included several public hearings on the subject of these takings. All of these studies and documents recommended taking a fee interest rather than an easement where it could be done without destroying buildings or taking homesteads. In this case, no buildings or homesteads were taken or destroyed. In addition, the airport expansion project required the approval of MNDOT. MNDOT required the city to acquire the fee where the fee could be acquired without the destruction of buildings.
2. Appellants charge that the city's actions in taking an easement only in the Swine Producers Association property while taking the fee in their property was a denial of equal protection, in that the lands are similarly situated. While appellants admit they are not members of a protected class, they do assert that the right to continue to own fee title to their lands is a fundamental right and the city must therefore show a "substantial and compelling" reason for the disparate treatment. The *850 taking of property by government exercise of its power of eminent domain is not, however, governmental infringement of the property owner's fundamental right to own property, since the power of eminent domain is itself a constitutional right. A reasonable determination concerning what property should be taken for public purposes and what property should be excluded is not a denial of equal protection. See Colchico v. U.S., 286 F.Supp. 507 (N.D.Cal. 1968). The reasons the city gave for taking a fee interest in appellants' land while only taking an easement in the Association's, that the city wished to avoid destroying buildings or taking away anyone's livelihood, demonstrates that the different treatment has a reasonable relation to a permitted end of government. The important point in this case is that what the government takes from appellants must be paid for fully and fairly. It is then permissible.
In matters of eminent domain, what land to take is a legislative question. Once the condemnation purpose is found to be public, the only question courts entertain is that of adequate and just compensation for the property taken. Housing and Redevelopment Authority v. Minneapolis Metropolitan Co., 259 Minn. 1, 15, 104 N.W.2d 864, 873-874 (1960). The resulting awkward and uneconomical sizes of appellants' farms are matters which go to the amount of compensation to be paid, not to the propriety of the taking itself. See State by Lord v. Pahl, 254 Minn. 349, 356, 95 N.W.2d 85, 90 (1959).

DECISION
The trial court did not err in refusing to limit the city's interest in the property it acquired from appellants. The city's decision to take a fee interest in appellants' property while taking only an easement in abutting property was not a denial of equal protection.
Affirmed.