*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0893**

State of Minnesota,
by its Commissioner of Transportation, petitioner,
Respondent,

vs.

Robert Reiland, et al.,
Respondents Below,
Magellan Pipeline Company, L. P.,
successor in interest to Magellan Pipeline Company, LLC
and to Williams Pipe Line Company
and to Williams Brothers Pipe Line Company,
Appellant.

**Filed February 1, 2016
Reversed and remanded
Stauber, Judge**

Olmsted County District Court
File No. 55-CV-14-8498

Lori Swanson, Attorney General, Stephen D. Melchionne, Assistant Attorney General, St. Paul, Minnesota (for appellant)

William E. Flynn, Daniel N. Sacco, Lindquist & Vennum, L.L.P., Minneapolis, Minnesota (for appellant)

        Considered and decided by Kirk, Presiding Judge; Stauber, Judge; and Kalitowski,

Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**U N P U B L I S H E D   O P I N I O N**

**STAUBER**, Judge

Appellant challenges the district court's grant of a condemnation petition for the taking of property by respondent State of Minnesota, arguing that respondent failed to meet its burden to show that the proposed taking was necessary when respondent already possessed easements over most of the property it sought to condemn. Because the district court did not make the required necessity findings, we reverse and remand.

## FACTS

In December 2014, respondent State of Minnesota, by its Commissioner of Transportation (MnDOT) filed a quick-take condemnation petition relating to trunk highways 14 and 42 in Olmsted County, including property owned by appellant Magellan Pipeline Company, L.P. (Magellan).[1] The requested taking was for a safety-improvement project to construct a roundabout at the intersection of highways 14 and 42. MnDOT sought to obtain the property in fee-simple absolute even though it had an existing easement for highway purposes over much of Magellan's property it sought to condemn. At the condemnation hearing, MnDOT's engineer testified that MnDOT wanted Magellan's property in fee-simple absolute rather than maintaining its existing highway easements in order to "clean . . . up" the project area and because it is MnDOT's current standard to seek fee-simple takings in cases such as this.

---

[1] The petition also included property of other parties who are not participating in this appeal.

Magellan has a large fuel-storage facility near the intersection of highways 14 and 42. Over 28,000 trucks per year collect petroleum products from Magellan's facility for delivery to customers. Magellan has two 60-foot accesses along highway 42, one of which is a driveway for truck access, located approximately 975 feet north of the intended roundabout. Magellan requested that MnDOT reserve easement rights to Magellan "for reasonably convenient and suitable access" to its property. At the condemnation hearing, MnDOT broadly stated that "[i]t is our position that through those 60-foot access openings that are retained Magellan retains the right to reasonably convenient and suitable access," but that a written order describing the easements was unnecessary because MnDOT was "simply not taking the right of access in its entirety."

Following the hearing, the district court granted both parties time to submit written briefs and proposed orders. The district court subsequently signed MnDOT's proposed order verbatim, filling in only the date. The sole finding in the order is that "the proposed taking appears to be necessary and such as is provided by law." The remainder of the order consists of boilerplate language ordering the taking described in the condemnation petition.[2] This appeal follows.

## D E C I S I O N

Prior to condemnation, a condemning authority "must determine that there is a public use for the land and that the taking is reasonably necessary or convenient for the

---

[2] The relevant part of the petition grants the fee acquisition of "4.17 acres, more or less, of which 3.70 acres is encumbered by an existing highway easement . . . [and] [a]ll right of access as shown on said plats by the access control symbol."

3

furtherance of that public use." *Lundell v. Coop. Power Ass'n*, 707 N.W.2d 376, 380 (Minn. 2006). The parties agree that the highway and roundabout constitute a public use but dispute whether the taking is reasonably necessary or convenient. The condemning authority need not make a "showing of absolute or indispensable necessity." *County of Blue Earth v. Stauffenberg*, 264 N.W.2d 647, 650 (Minn. 1978) (quotation omitted).

The existence of necessity is a judicial question. *City of Shakopee v. Minn. Valley Elec. Coop.*, 303 N.W.2d 58, 62 (Minn. 1981). But a condemning authority's determination of necessity is considered a legislative decision to which the district court defers; the district court may overturn the determination only if it is "manifestly arbitrary or unreasonable." *Lundell*, 707 N.W.2d at 381 (quotation omitted). The district court's findings are subject to the clearly erroneous standard of review. *Itasca County v. Carpenter*, 602 N.W.2d 887, 889 (Minn. App. 1999).

MnDOT asserts that its own "determination that particular parcels of property are necessary to effect the public project is prima facie evidence of that necessity." We disagree with MnDOT's tautological argument: MnDOT essentially asserts that because it provided documentation of necessity, the project *is* necessary. *Cf. City of Pipestone v. Halbersma*, 294 N.W.2d 271, 274 (Minn. 1980) (concluding that a city council resolution that a taking was necessary was prima facie evidence of that necessity). MnDOT adds that given the traffic-safety issues at the intersection of the highways 14 and 42, access control in the vicinity of the proposed roundabout is necessary. But no evidence was presented to the district court regarding the extent of highway access control necessary for the proposed roundabout, or what portion of Magellan's land adjacent to the proposed

4

roundabout is sufficient to satisfy that objective.[3]  Additionally, MnDOT's engineer

testified that the reason for taking the land in fee simple was to "clean up the right-of-

way," not because it was necessary for the project.[4]  MnDOT presented no evidence of

need for more property than its existing easement along highway 42, why it had any need

for property along highway 14, or why it needed to convert its existing easements to fee-

simple ownership.[5]  Without clear and detailed findings from the district court on whether

"cleaning up" ownership rights, the nature and extent of MnDOT's proposed taking, or

other bases constitute reasonable necessity or convenience, we cannot determine whether

the district court's decision was clearly erroneous.

*Access rights to highway 42*

One of Magellan's primary concerns appears to be that its trucks will no longer

have access to their facility from highway 42 because MnDOT was granted all access

rights along that highway.  MnDOT asserts that Magellan's existing access to the

driveway where trucks enter and leave the facility are not included in the taking.  But the

relevant portion of the district court's order and MnDOT's petition state that the acquired

land includes "any existing right of access to said highway in those cases which are

---

[3] MnDOT incorrectly applies a burden-shifting test, asserting that since it has established a prima facie case of necessity, "the opposing landowner has the burden of proof to establish lack of necessity."  MnDOT is correct that "[o]nce necessity has been established, condemnation may only be denied when the party contesting condemnation demonstrates that the condemnation proposal is manifestly arbitrary or unreasonable." *Carpenter*, 602 N.W.2d at 889.  But because the parties dispute whether the condemnation is necessary, the burden has not yet shifted.
[4] MnDOT has historically by easement controlled much of the property it now seeks to condemn.
[5] The proposed roundabout appears totally within MnDOT's existing easement.

therein particularly mentioned." The petition also specifically states that MnDOT will acquire in fee "[a]ll right of access as shown on said plats by the access control symbol." The "access control symbol" runs along all of Magellan's property that is adjacent to highways 14 and 42, with the exception of the 60-foot accesses along highway 42. MnDOT's map distinguishes the "access control symbol" from the actual access points. MnDOT thus asserts that the taking will not limit Magellan's current access to highway 42. It appears that the grant of "access control" is technically distinguished from the "commercial industry access" where Magellan's trucks access the facility from highway 42. The parties may not have a conflict. But given the ambiguity in terms and the lack of findings that define what "access control" delineates or distinguish language in the condemnation petition, Magellan has a valid concern that its truck access could be restricted or extinguished. MnDOT stated at oral argument that it chooses to rely only on its map rather than also employing written descriptions because of the possibility of mistake in utilizing both a written description and a map. We are not persuaded that reference only to a map is sufficient in this case.[6] Thus, we remand for the district court to make clear findings on Magellan's accesses.

*Sufficiency of an easement*

Magellan next argues that the existing highway easements—and not a fee-simple acquisition—are sufficient for the roundabout project. A condemnor's current interest in

---

[6] In fact, MnDOT suggested at the district court hearing that the district court not examine the certified copy of the large condemnation map "because you'll never close it again."

the property sought for the taking in fee simple is irrelevant to the determination of necessity. *Lundell*, 707 N.W.2d at 382. "The authority need only determine the underlying necessity to use the property in order to further its public purpose." *Id.* The district court may use its discretion to "limit the title or easement to be acquired by the [condemnor] by defining the rights and privileges which the owner of any of the lands may exercise therein in subordination to the public uses to which it is appropriated." Minn. Stat. § 117.075, subd. 5 (Minn. 2014). But when the "record supports the acquisition of the fee as reasonably necessary or convenient for furtherance of a public purpose, the [district] court's decision not to exercise its power to limit the [condemnor's] title is not an abuse of its discretion." *City of New Ulm v. Schultz*, 356 N.W.2d 846, 848 (Minn. App. 1984) (quotation omitted). Instead, the condemnor "need only show that acquiring the fee rather than easements was a reasonable means of acquiring [the taking]. *Id.* at 849. "The mere suggestions of possible alternatives to the condemning authority's plan will not in itself support a finding of arbitrariness." *City of Pipestone*, 294 N.W.2d at 274.

In *Lundell*, respondent Cooperative Power Association (CPA) condemned appellants' property after the parties were unable to renegotiate a lease for a telecommunications tower. 707 N.W.2d at 379. The appellants contended that CPA was required to show that it was necessary to acquire the land in fee simple rather than to continue the lease. The Supreme Court held that CPA's alternative option to continue the lease did not invalidate the finding of necessity, and that "a condemning authority has the option to either condemn property or negotiate some lesser interest in it." *Id.* at 382.

7

*Lundell* is factually distinguishable because the disputed property there was leased and not previously condemned for an easement. *Id.* at 379. But because *Lundell* applied only a "reasonableness" standard, we cannot read *Lundell* to establish a bright line requirement that MnDOT can only seek an easement and not fee-simple ownership, provided there was underlying necessity. *See also Schultz,* 356 N.W.2d at 848 ("As long as the record supports the acquisition of the fee as reasonably necessary or convenient for furtherance of a public purpose, the trial court's decision not to exercise its power to limit the city's title is not an abuse of discretion.") (quotations omitted). But here, the findings are insufficient on either necessity or reasonableness: the district court simply stated that the taking "appeared" necessary. *Cf. id.* (affirming the district court's determination that a fee-simple rather than an easement taking was necessary because the necessity finding was supported by engineering studies, FAA documents, testimony documenting the long planning process, and several public hearings). Notably, the district court did not make findings on whether seeking fee title—to "clean up" the condemned areas—constituted reasonable necessity. While a district court is not specifically prohibited from adopting proposed findings submitted by a party, here the district court accepted MnDOT's proposed findings verbatim, failing to even remove the fax heading from the proposed order submitted by the attorney general's office. *See Lundell*, 707 N.W.2d at 380 n.1 ("We discourage district courts from adopting proposed findings of fact and conclusions of law verbatim because it does not allow the parties or a reviewing court to determine the extent to which the court's decision was independently made."). Because the

8

condemnation order lacks necessary findings and evidence of independent decision-making, we reverse and remand.

**Reversed and remanded.**